## HELM *v.* ZARECOR.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF TENNESSEE.

No. 395. Submitted October 9, 1911.—Decided November 6, 1911.

In determining whether diversity of citizenship exists to give jurisdiction it is the duty of the Circuit Court to arrange the parties with respect to the actual controversy looking beyond the formal arrangement made by the bill.

Where, as in this case, the controversy over the control of a corporation transcends the rivalry of those claiming to be members of its board of control and the corporation itself is a mere instrumentality or title holder, it is properly made a party defendant and should not be aligned as a party plaintiff merely because the plaintiffs belong to the same faction that claims the power to appoint the members of the board of control.

THE facts, which involve the jurisdiction of the Circuit Court of the United States in this case, are stated in the opinion.

Mr. *John M. Gaut* and Mr. *Alexander P. Humphrey* for the appellants.

Mr. *W. C. Caldwell,* Mr. *Frank Slemons* and Mr. *W. B. Lamb* for the appellees.

MR. JUSTICE HUGHES delivered the opinion of the court.

The sole question presented by this appeal is with respect to the jurisdiction of the Circuit Court.

The bill, as amended, was brought by certain ministers, ruling elders and laymen of the Presbyterian Church in the United States of America, citizens of States other than

Tennessee, suing for themselves and for all the members of said church, against individuals, citizens of Tennessee, described as representing not only their own interests but also those of all the members of the Cumberland Presbyterian Church, and "The Board of Publication of the Cumberland Presbyterian Church," a Tennessee corporation.

The controversy disclosed by the bill arose from the proceedings, taken in 1906, to effect the union of the Cumberland Presbyterian Church and the Presbyterian Church in the United States of America, both voluntary religious associations, and relates to the property and management of the defendant corporation. The Board of Publication had been incorporated in 1860, under the direction of the General Assembly of the Cumberland Presbyterian Church, for the purpose of conducting its publishing work, and had acquired valuable property consisting of a publishing house and its equipment in Nashville, Tennessee. The original members of the corporation were the committee of publication of the Church, and their successors under the charter were appointed by the General Assembly to which was committed its regulation and control.

The bill alleged that the two Churches had been legally united and that as a result the property in question was held by the corporation in trust "for the entire reunited denomination;" and, further, that "the Board and its officers and managers were advised and believed and still believe" that the union was valid, that "thereby the Board of Publication became a corporation and institution of the reunited Church," and that the managers of the corporation "could do nothing else than recognize the General Assembly of the united Church by reporting to it and otherwise recognizing its authority." It was also alleged that a minority of the members of the Cumberland Presbyterian Church, and of its ministers, who

were opposed to the consolidation, repudiated it and ef-
fected a separate organization under the former name, and
that thereupon a body assuming to be the General As-
sembly of the Cumberland Presbyterian Church declared
the offices of all the members of the Board of Publica-
tion vacant and proceeded to elect persons of their own
organization to fill the supposed vacancies. These per-
sons had made demand for the possession of the corporate
property, claiming to be the rightful members of the cor-
poration and that its property was held in trust for the
religious association by whose General Assembly they
had been elected. It was stated that this claim cast a
cloud upon the equitable title to the property. After
reviewing at length the history of the Cumberland Pres-
byterian Church, the action of the representatives of the
two Churches which culminated in the alleged consolida-
tion, and the subsequent antagonistic proceedings, the
bill prayed for decree that the property in question is held
in trust by the corporation for the benefit of the Presby-
terian Church in the United States of America or the
members thereof, and that the members of the Board
elected by the reunited Church are the true and lawful
members of said Board; that the defendants be enjoined
from interfering with the control and management of the
corporation by those members or with the corporate prop-
erty, and that if mistaken with respect to the relief prayed
for as to the persons who constitute the Board and have
the right of management the court should decree that
"whoever may be the members of the Board and whoever
may be entitled to such management, they shall manage
the corporation and administer the trust for the use and
benefit of said reunited Church."

The defendants filed two pleas to the jurisdiction. In
the first plea it was alleged that the complainants had
collusively made and omitted both complainants and de-
fendants for the purpose of showing the requisite diversity

of citizenship. The second plea set up the pendency of a suit in the Chancery Court of Davidson County, Tennessee, in the nature of a *quo warranto* proceeding, brought on the relation of J. H. Zarecor and other individual defendants herein to oust those named as defendants in that suit from membership in the Board of Publication, and from the control and management of its property and to install the relators in their stead. These pleas the court below overruled. As to the ground of the first plea, that certain persons had been omitted as parties, the court held that § 5 of the Judiciary Act of March 3, 1875, c. 137, 18 Stat. 472, relates solely to the collusive making of the actual parties plaintiff or the collusive joinder of the actual parties defendant, and that if the parties before the court are properly aligned as plaintiffs and defendants, it is not a ground of dismissal, in so far as the jurisdictional question is concerned, that necessary parties are omitted, either as plaintiffs or defendants, whose presence would defeat the jurisdiction of the court. While the omission of indispensable parties, if any, said the court, would be a ground for dismissal on the merits if they were not joined, or if joined and on proper alignment their citizenship was such as to defeat the Federal jurisdiction, a plea to the jurisdiction would then lie, their omission in the meantime could not defeat the jurisdiction of the court in a controversy between the parties who were before the court. And so far as the first plea was based upon the ground that the complainants had collusively made parties plaintiffs and defendants for the purpose of showing a diversity of citizenship, the plea was held to be insufficient in law in that it did not specify what parties are alleged to have been collusively made. The second plea was overruled because it did not reach the whole case made by the bill, as the bill did not merely ask a determination as to the persons who were the true and lawful members of the corporation, which was the only

matter involved in the *quo warranto* proceeding in the
state court, but sought a decree declaring the trust upon
which the property of the corporation is held and the
uses and purposes for which it is to be administered, who-
ever might be found to be the true and lawful members of
the corporation. We need add nothing to what was said
by the court below upon these points.

But the court of its own motion dismissed the bill for
want of jurisdiction, for the reason that the defendant
corporation, the Board of Publication, was not antago-
nistic to the complainants, and should be aligned upon the
same side of the controversy with the complainants; and
that, therefore, upon such alignment, some of the de-
fendants and one of the complainants being citizens of
the same State, the Circuit Court had no jurisdiction.
In this we think the court erred.

It was, undoubtedly, the duty of the court in deter-
mining whether there was the requisite diversity of citi-
zenship to arrange the parties with respect to the actual
controversy, looking beyond the formal arrangement made
by the bill. *Removal Cases*, 100 U. S. 457; *Detroit* v. *Dean*,
106 U. S. 537; *Dawson* v. *Columbia Avenue Trust Company*,
197 U. S. 178; *Steele* v. *Culver*, 211 U. S. 26. What then
is the controversy?

The suit cannot properly be said to be brought to en-
force a right inhering in the Board of Publication or by
the complainants as members of that corporation. And
the question whether the Board may be assigned a place
on the other side of the controversy is not to be answered
by applying the rule which governs suits by shareholders
on behalf of a corporation or by beneficiaries in the right
of a trustee. *Hawes* v. *Oakland*, 104 U. S. 450, 461;
*Doctor* v. *Harrington*, 196 U. S. 579, 587; *Pacific Railroad
Co.* v. *Ketchum*, 101 U. S. 289, 299. The complainants
sue for themselves and on behalf of all members of the
Presbyterian Church in the United States of America,

and the object of their suit is to enforce the right of the members of that Church as it was constituted after the alleged union. The Board of Publication was incorporated merely as a convenient agency for the publishing work of the Cumberland Presbyterian Church. The charter clearly discloses its character. The representative assembly of the Church was to fill the vacancies in its membership and control its conduct. It was an incorporated committee of publication, which lost none of its essential qualities as an agent of denominational service when it became an artificial person, clothed with power to hold property in a corporate capacity. The language of the charter is that "said Board shall be subject to the regulation and control of the General Assembly of said Church under its past and future actions on the subject; the number of the Board may be increased or diminished and all vacancies filled as the said authority has or may direct; the General Assembly of the Church shall also have power to locate the Board and change the same at pleasure; and also at any time to alter the name of said corporation or dissolve the same, but not so as to prejudice the rights of others." The contention of the complainants is that, after the union, the Cumberland Presbyterian Church continued in the united Church and that the General Assembly of the latter succeeded to the authority formerly possessed by the General Assembly of the separate denomination. The defendants are sued as the representatives of the religious association which insists that it is still the original Cumberland Presbyterian Church, continuing with all its separate powers unimpaired.

It is thus evident that the controversy transcends the rivalries of those claiming membership in the Board and the assertion of rights inhering in that corporation itself. It embraces the fundamental question of the rights of these religious associations, said to be represented by the respective parties, to use and control the corporate agency and

to have the benefit in their denominational work of the
corporate property. Viewed in this aspect, the relation of
the corporation to the controversy is not to be determined
by the attitude of alleged members of the Board who be-
lieved the union to have been consummated, nor by the
fact that it does not appear that they have surrendered
possession. These do not suffice to identify the interest of
the corporation with that of the complainants. And the
individual defendants actually joined it with themselves in
filing the pleas to the jurisdiction, and in this way, it may
be assumed, they sought to emphasize the contention that
the Board was under the exclusive direction of the separate
association to which they adhered and should be employed
solely for its benefit.

To align the corporation itself with the complainants
is virtually to decide the merits in their favor. The
Board is simply a title holder, *Watson* v. *Jones*, 13 Wall.
679, 720; an instrumentality, the mastery of which is in
dispute. But, as it is the holder of the legal title, the
complainants seek a decree defining, in the light of the
proceedings alleged in the bill, the equitable obligations
arising from the nature and purpose of the corporate
organization.

We are therefore of opinion that the corporation was
properly made a party defendant and that the court erred
in dismissing the bill for want of jurisdiction.

*Decree reversed.*