## McCOMB et al. v. McCORMACK et al.

## No. 11482.

Circuit Court of Appeals, Fifth Circuit.

Jan. 8, 1947.

Rehearing Denied Feb. 25, 1947.

R. O. Kenley and Walter F. Brown, both of Houston, Tex., and Perry McComb, of Conroe, Tex., for appellants.

Jesse W. McDaniel, Robert L. Cole, Jno. C. Townes, Dwight H. Austin, Brian S. Odem, U. S. Atty., and Joseph W. Cash, Asst. U. S. Atty., all of Houston, Tex., and O. B. Wigley, of Galveston, Tex., J. L. Pitts, of Conroe, Tex., Julius H. Runge, of Dallas, Tex., and F. K. Dougharty, of Liberty, Tex., for appellees.

Before SIBLEY, WALLER, and LEE, Circuit Judges.

LEE, Circuit Judge.

In 1831 the Governments of Cohuila and Texas granted to James Hodge, on a survey and field notes made by Surveyor Wightman, what is known as the James Hodge Survey or the James Hodge League. While a dispute as to the location of the survey exists among the parties, all of them claim interests arising either out of record titles or out of estoppel, acquiescence, and limitation. To facilitate the description of the claims by the various parties within the survey, and to under-

stand the pleadings, we attach a map taken from a survey of the James Hodge League made in 1942 by J. S. Boyles:

In 1846 the James Hodge Survey by deed was divided into two equal areas, the East and West halves. On his map Boyles

shows this division by the line AA. In 1862 the owners of the Eastern half of the James Hodge Survey conveyed by acreage a 400- and a 210-acre tract off the Southeastern corner of the survey. On his map Boyles shows these two tracts, combined, between the line HH and the San Jacinto River. After these two tracts were split off, the owners of the balance of the East half of the James Hodge Survey split the unconveyed portion into halves. Boyles on his map shows the Western one-half as the area between AA and FF, and he shows the Eastern one-half as the area between FF and HH. In 1876 the owner of the Western half of the James Hodge Survey, shown by Boyles as the land West of line AA, split the land by deed into halves. Boyles shows on his map the division line as BB: one half lying between BB and the Western boundary of the James Hodge Survey and the other half lying between BB and AA. The lines BB, AA, FF and HH on his map were calculated by him and are not represented by any marks on the ground.

On December 6, 1941, the plaintiffs [1] filed their original complaint against certain defendants [2] in trespass to try title with alleged jurisdiction based upon diversity of citizenship.[3] By a "first amended complaint," filed on October 1, 1942, the alleged residence of one plaintiff was changed,[4] and numerous defendants were added.[5] All persons, except the cotenants of the plaintiffs, claiming an interest in the James Hodge Survey were then parties before the court. The plaintiffs, as owners of an undivided half interest, asked judgment for the East half of the West half of the James Hodge Survey as they described it in metes and bounds (this claim is shown by Boyles as the land lying between AA and BB on his map) or the East half of the West half as the court might find it. They alleged that they knew not the exact nature of the claims of the defendants but that they were entitled to judgment against the defendants for title and possession and the removal of the cloud from their title.

By motions defendants, Perry McComb, et al., Grogan-Cochran, and the J. S. Hunt Lumber Co., Inc., unsuccessfully attacked the jurisdiction of the court over plaintiffs' original claim on the theory that plaintiffs' cotenants, who owned the other one-half undivided interest in plaintiffs' claimed East Half of the West Half, were indispensable to the suit and that their appearance in the suit with the then plaintiffs would destroy the diversity of citizenship between the plaintiffs and defendants.

On October 30, 1942, eighteen parties, including three nonresident aliens, citizens of Germany, intervened with permission of the court in the suit to assert claim to undivided interests to the East Half of the

[1] Lillie B. McCormack, Mary W. Millard, Adella W. Beard, Rebecca W. Lewis and husband, B. A. Lewis, all citizens of Kentucky.

[2] Grogan-Cochran Lumber Co., Perry McComb, Roy Simpson, N. M. Garrett, George Clyburn, M. R. House, J. S. Hunt Lumber Co., Inc., all of Texas; and Jennie Sealy Smith, of New York.

[3] No doubt exists as to the fact that $3,000 was involved.

[4] From Kentucky to Virginia.

[5] The defendants, including those in the original complaint, were then as follows: Grogan-Cochran Lumber Co., Perry McComb, N. M. Garrett, George Clyburn, Roy Simpson, M. R. House, Alfred H. Smith, David N. Picton, Jr., Stephen L. Pinckney, J. W. Cain, Harry C. Hanszen, D. B. McDaniels, and J. P. Scranton, all of Texas; Raymond Dickson, of Arizona; The Federal Royalty Co., of Texas; J. S. Hunt Lumber Co., of Texas; J. S. Lamberton, of Oklahoma; Georgia L. Seaton and husband, William L. Seaton, of Ohio; Mrs. Ruth L. Supplee and husband, George W. Supplee, residents of India and citizens of the State of Pennsylvania, U. S. A.; T. W. Sutherland, of Texas; M. C. Kifer, of Pennsylvania; Mrs. Zula Stewart, of Texas; Lillie Kayser Butler and husband, Earl H. Butler, of Texas; San Jacinto National Bank, Executor of the Estate of J. Llewellyn, deceased, of Texas; The Sealy and Smith Foundation, of Texas; Fred W. Catterall, one of the trustees under the will of John Sealy, deceased, of Texas; City Bank Farmers Trust Company, one of the trustees under the will of John Sealy, deceased, of New York; Rebecca Terry White, one of the trustees under the will of John Sealy, deceased, of Maryland; Humble Oil & Refining Co., of Texas.

West Half of the James Hodge Survey. On January 10, 1944, these interveners, by an amended plea of intervention, adopted in substance the plaintiffs' "first amended complaint." [6]

On July 3, 1943, the United States intervened and alleged that the three non-resident aliens [7] owned an undivided five-eighths (⅝) of one-fourth (¼) of the East Half of the West Half of the James Hodge Survey; that by an order of the Alien Property Custodian made on February 19, 1943, the interest of these alien nonresidents had vested in the Alien Property Custodian. The United States, in protection of the interests vested in the Alien Property Custodian, adopted the pleadings of the plaintiffs in their "first amended complaint."

On January 5, 1944, two other parties, Mrs. Ed. J. Drake and R. H. Moffatt, both residents of Texas, intervened to assert claim to their interests in the East Half of the West Half of the James Hodge Survey by adopting in substance the pleadings of the plaintiffs' "first amended complaint."

Both the plaintiffs and the different interveners claimed as cotenants without any conflicting interests among themselves. After these interventions, all the cotenants interested in the East Half of the West Half of the James Hodge Survey were before the court, and, consequently, all the interests in the survey were then before the court.

In order to understand the proper alignment of the parties for the purpose of determining whether the court had jurisdiction over the various claims, counterclaims, and cross-claims, it is necessary to determine beyond the actual formal pleadings what the controversies between the parties were at the trial. Only the McComb defendants actively disputed the correctness of the Boyles survey as to the location or the computed division of the James Hodge Survey. That does not mean, however, that all of the contentions of the defendants other than the McComb group were identical with those of the plaintiffs and interveners. The McComb group of defendants tried to establish a right to the land lying between AA and DD by way of estoppel and limitation on the hypothesis that their contention as to the incorrectness of the Boyles survey was not adopted by the court.

The Hunt Lumber Company and the Lamberton Drilling Company at the trial were primarily interested in proving title by estoppel, acquiescence, and limitation to the land lying between EE and FF, against the McComb group of defendants, who were claiming this same strip. No one was actively disputing the title of the Hunt Lumber Company and the Lamberton Drilling Company to the land lying between FF and GG and the adjoining land lying between the San Jacinto and Lake Creek, to which they had record title. [8]

Mrs. Zula Stewart, et al., claimed record title to the 610 acres shown in the Southeastern corner of the James Hodge Survey, between HH and the San Jacinto River, and claimed title to the land lying between GG and HH as shown on Boyles's map, by way of estoppel, acquiescence, and limitation.

---

[6] The interveners are: Julia Runge, of Texas; Catherine Scott Runge, of Texas; Dorothy Rose DeShong and husband, Andrew W. DeShong, Jr., and Julius H. Runge, of Texas; Henry J. Runge, of Texas; Adrian Rose McGee and husband, Kline McGee, of North Carolina; Margaret Rose Turnbull, of Texas, and her husband, presently residing in England; Henry J. Rose, of South Carolina; Higginbotham Brothers & Co., of Texas; Citizens National Bank, now in liquidation, of Texas; Mrs. J. R. Morris, and husband, Jim Morris, of Texas; Mrs. Anna Stromeyer, Meta Eyl, and Hans Eyl, of Hanover, Germany.

[7] Mrs. Anna Stromeyer, Meta Eyl, and Hans Eyl, residents of Hanover, Germany. They were three of the eighteen parties in the intervention of October 30, 1942.

[8] The cross-claims of Hunt Lumber Company and Lamberton Drilling Company included all the land lying between lines EE and GG and the adjoining land between the San Jacinto River and Lake Creek; but at the trial the McComb group made no claim to the lands between lines FF and GG and the adjoining land between the San Jacinto River and Lake Creek, thus leaving in contest, on the merits, between the parties under the cross-claims the lands between EE and FF.

At the trial the Sealy and Smith Foundation group of defendants and the Humble Oil & Refining Company were chiefly interested in, besides the establishment of the Boyles version of the survey and their record title to the West Half of the West Half thereof, the establishment of their title to the land shown by Boyles between the line BB and the Western boundary of the James Hodge Survey.

In its judgment the court below established the location of the James Hodge Survey by. metes and bounds as shown by Boyles on his map; the land of the Sealy group as shown by the strip between BB and the Western boundary of the James Hodge Survey; the land of the plaintiffs and interveners as shown by the strip between lines BB and AA on Boyles's map; the land of the McComb group as that between lines AA and EE on Boyles's map; the land of the Hunt Lumber Company and the Lamberton Drilling Company as the strip between lines EE and GG and the adjoining land between the San Jacinto River and Lake Creek; and the land of the Stewart defendants as that between GG and the San Jacinto River.

Perry McComb, N. M. Garrett, and George Clyburn, three members of the McComb group of defendants, bring this appeal. The assignment of errors for this appeal may be classified into these questions: (1) Did the court below have jurisdiction over the various claims?[9] (2) Did the court below err in making its finding of fact as to the location and divisions of the James Hodge Survey? (3) Did the court below improperly admit certain evidence?

Appellants' question as to the jurisdiction of the court below may be subdivided into four further questions: (1) Before the intervention of any of plaintiffs' co- tenants, were the cotenants indispensable parties to the plaintiffs' claims? (2) Did the court have jurisdiction over the claims of the interveners and did their interventions destroy the original jurisdiction of the court? (3) Should the court below have realigned any of the defendants with the plaintiffs so as to destroy the diversity of citizenship between the plaintiffs and defendants? (4) Did the court have jurisdiction over cross-claims by the defendants Hunt Lumber Company and Lamberton Drilling Company, against the McComb defendants?

■ The cotenants of the plaintiffs were not, prior to their intervention, indispensable parties. Under the Texas law:

" * * * one tenant in common may maintain an action of trespass to try title without joining his cotenant. * * * one tenant in common may maintain an action of trespass to try title against a stranger.

\* \* \* \* \* \*

"The term 'stranger,' as here used, means one who claims by title other than that asserted by the plaintiffs; or, more strictly speaking, one who, in deraigning title, does not in any way connect himself with that asserted by plaintiff."[10]

In speaking of tenants in common, the Supreme Court of Texas has said:

" * * * Tenants in common do not claim through or under each other, and there is no such privity between them that a judgment for or against one of them, affecting title to land, will bind the others."[11]

■ The question whether the court had jurisdiction over the claims of the interveners and whether the intervention destroyed the original diversity of citizenship, we have already settled in Drumright et al. v. Texas Sugarland Co., et al.[12] In

---

[9] Since only members of the McComb group of defendants are making this appeal, only questions involving their interests may here be raised. As far as the jurisdiction of the court over the counterclaims of the various defendants is concerned, the McComb group is only interested in the counterclaims of the Hunt Lumber Company and the Lamberton Drilling Company to the extent that said counterclaims affect the land between the lines EE and FF. As far as the divisions of the survey are concerned, the McComb group is interested only in the lines that directly affect their interests.

[10] Pilcher v. Kirk, 55 Tex. 208.

[11] Kirby Lumber Corporation v. Southern Lumber Co., 1946, Tex., 196 S.W.2d 387, 389.

[12] 16 F.2d 657 (1927).

that suit we held that where a plaintiff brought suit to foreclose a mortgage against a defendant on grounds of a diversity of citizenship and where the intervener could not have originally joined the plaintiff without destroying the diversity of citizenship, he could intervene to protect an interest he had in the land under foreclosure despite the subsequent lack of diversity between intervener and defendant.[13]

■ The plaintiffs were chiefly interested in establishing the Boyles survey, and, while several of the defendant groups were likewise interested in the establishment of that survey, the establisment of that survey was not their primary interest. Their primary interest lay in the establishment of their claims by estoppel, limitation, or acquiescence, regardless of the location of the James Hodge Survey. For these reasons the interests of the defendants were not identical with those of the plaintiffs.

It follows that the court below did not err in .failing to realign certain of the defendants as parties plaintiff at any stage in the proceeding.

" * * * The specific question is this: Does an alignment of the parties in relation to their real interests in the 'matter in controversy' satisfy the settled requirements of diversity jurisdiction?

"As is true of many problems in the law, the answer is to be found not in legal learning but in the realities of the record. Though variously expressed in the decisions, the governing principles are clear. To sustain diversity jurisdiction there must exist an 'actual,' Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 56 L.Ed. 77, 'substantial,' Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own deter-

mination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.' [City of] Dawson v. Columbia Ave. Saving Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L. Ed. 713. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interests,' [City of] Dawson v. Columbia Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. at page 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. *It must be ascertained from the 'principal purpose of the suit,'* East Tennessee, V. & G. R. Co. v. Grayson, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the *'primary and controlling matter in dispute,'* Merchants' Cotton-Press Storage Co. v. Insurance Co. [North America], 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court."[14] [Emphasis added.]

*The principal purpose of the suit and the primary and controlling matter in the suit,* so far as the defendants other than the McComb group were concerned, *was the establishment of their claims,* regardless of the location of the James Hodge Survey. Therefore, none of the defendants need be realigned with the plaintiffs and interveners.

■ The appellants urge that the court below lacked jurisdiction to render judgment against appellants on the cross-claims of the J. S. Hunt Lumber Company and the Lamberton defendants for the land lying between the lines EE and GG and the adjoining land between the San Jacinto River and Lake Creek because the cross-claims rest upon neither the requisite diversity of citizenship between the cross-claimants and the other parties to the .suit nor the requisite $3000 amount in controversy.

---

13 See criticism in 2 Moore's Federal Practice, p. 2413, § 24.15.

14 City of Indianapolis v. Chase National Bank of City of New York, 314 U. S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47.

The appellants on this appeal do not claim the land lying between lines FF and GG and the adjoining land between the San Jacinto River and Lake Creek. Therefore, appellants' attack on this appeal of the judgment of the court below as to these lands raises a purely abstract question. This court will determine only matters actually in controversy and essential to a decision in the particular case before it.[15]

■ As to the land lying between the lines EE and FF, the appellants may not attack the jurisdiction of the court below for another reason. The appellants in their own cross-claim against the various parties to the suit asked judgment for the land lying between the lines EE and FF. The court below rendered judgment against the appellants in favor of the Hunt Lumber Company and the Lamberton defendants on this cross-claim. The appellants are not attacking the jurisdiction of the court over their own cross-claim. We need not, therefore, determine the propriety of the appellants' cross-claim unless the requisite amount of $3,000 and a diversity of citizenship must support it. "Cross-claims, like all cross-bills, and like compulsory counterclaims are considered as auxiliary or ancillary to the principal claim to which they are related, and the jurisdiction which supports that claim will support the cross-claim." [16]

■ Since the court below properly entered judgment on appellants' cross-claim for the Hunt Lumber Company and the Lamberton defendants against the appellants, we need not determine whether the court had jurisdiction over that part of the cross-claims of the Hunt Lumber Company and the Lamberton defendants involved in the appellants' cross-claim. A lack of jurisdiction over the cross-claims of the Hunt Lumber Company and the

Lamberton defendants would not deprive the claimants of the right of contesting another cross-claim that concerned the same land, between lines EE and FF, and the right upon a successful contest to receive a judgment in their favor, for that land.

■ At the trial the McComb defendants attempted to show by the testimony of a surveyor, one Atkinson, that Boyles had incorrectly located the boundaries of the James Hodge Survey. At the trial they were the only ones who actively disputed the Boyles survey. Boyles had located the lines of the James Hodge League by certain witness marks on the ground. None of these witness marks were originally placed by Wightman, but they had been accepted by everyone, surveyors and interested landowners alike, as the true boundaries of the James Hodge Survey. Atkinson never had made a complete survey of the James Hodge Survey, but he claimed that Boyles had misplaced the James Hodge Survey because Atkinson had located one of the original Wightman witness marks at the Northwest corner of the survey. The location of the Northwest corner at this mark would have added lands to the survey sufficient to place the land described in metes and bounds in the McComb answer in the Eastern half of the James Hodge Survey rather than partly in the Eastern half and partly in the Western half, as placed by Boyles. The district court found that the correction of Atkinson was erroneous and the Boyles survey correctly located the James Hodge League and the divisions thereof. Since the record contains "substantial credible evidence" to support the finding as to the Boyles survey and the other findings of fact, we may not disturb those findings.[17]

■ The evidence likewise supports the finding of the court below that the McComb defendants did not have sufficient

---

[15] Marker, Federal Appellate Jurisdiction and Procedure, 296, § 252. See Alexander Sprunt & Son v. United States, 281 U.S. 249, 50 S.Ct. 315, 74 L.Ed. 832; Standard Oil Co. v. United States, 283 U.S. 163, 51 S.Ct. 421, 75 L.Ed. 926.

[16] 1 Moore 726, § 13.08 and cases cited therein. Cf. Galveston, Harrisburg & San Antonio Ry. Co. v. Hall, et al.,

1935, 5 Cir., 70 F.2d 608; cf. Republic National Bank & Trust Co., et al., v. Massachusetts Bonding & Insurance Co., et al., 1934, 5 Cir., 68 F.2d 445.

[17] Sanders v. Leech, et al., 5 Cir., 158 F.2d 486; Federal Rules of Civil Procedure, rule 52 (a), 28 U.S.C.A. following section 723c.

possession of the land between AA and DD to support their counterclaim and that plaintiffs and interveners were not estopped to claim to line AA.

The appellants objected to the admission of much testimony before the court. Since the trial was not to a jury, the judge could admit any evidence offered and he could reserve decision on what legal effect he should give to it until he decided the case. The admission of evidence to which he gave no weight in his decision was harmless error. Federal Rules of Civil Procedure, 61.

The judgment appealed from is affirmed.