### ACKERMAN v. HOOK et al.

### No. 10114.

United States Court of Appeals,
Third Circuit.

Argued May 22, 1950.

Decided June 16, 1950.

Harry Price, New York City (Matthew Sidney Biron, Philadelphia, Pa., on the brief), for plaintiff-appellant, Harold S. Ackerman.

William B. Jaspert, Pittsburgh, Pa. (Synnestvedt & Lechner, Philadelphia, Pa., on the brief), for defendants-appellees, C. Howard Hook and others.

Before GOODRICH, McLAUGHLIN and HASTIE, Circuit Judges.

McLAUGHLIN, Circuit Judge.

On motion, the Court below dismissed plaintiff's action as against appellees on the ground of no jurisdiction.

In order to show the nature of appellant's claims against the various defendants, we outline his amended complaint in detail. It alleges that Federal jurisdiction arises because of "diversity of citizenship and patents". Plaintiff-appellant is a citizen of New York. Defendant, Hook & Ackerman, Inc., is a Pennsylvania corporation with its principal place of business in Philadelphia. The individual defendants are citizens of that state. Appellees all reside in Pittsburgh. Graffius is a resident of Philadelphia. The amount in controversy is stated as in excess of $3,000.

A declaratory judgment is requested regarding certain agreements affecting patents and as to the scope and effect of a designated patent of plaintiff. It also requests "restraint of unfair competition and palming off as gas fired boilers by individual Defendants as if they were patent boiler of Plaintiff."

The complaint sets out that the defendant corporation executed a non-exclusive license agreement with plaintiff to manufacture and sell boilers in accordance with plaintiff's invention and patent; that plaintiff transferred to appellee, McCance, one-half interest in said patent at the request of and for the benefit of appellee, Hook, and in consideration for Hook aiding and cooperating in the business of the defendant corporation in connection with the patents; that plaintiff and Hook had agreed not to do anything in connection with the patent except by mutual consent; that Hook sold his interest in the corporation to one Baier; that a further license agreement was entered into by plaintiff and Hook with the corporation subject to an outstanding agreement to Sears, Roebuck & Co.; that the corporation agreed to pay plaintiff and Hook certain royalties; that the corporation had the agreed right to sue in its own name for unlawful use of the invention; that Hook is assisting and aiding third parties, including the other individual defendants, to make unlawful use of the invention; that Hook is liable to account to both plaintiff and the corporation for various transactions in connection with the patent; that appellees are guilty of patent infringement; that Hook has forfeited his interest in the patent and to royalties therefrom and that the agreements with Hook in connection with said patent should be cancelled.

It is then alleged that "There is an actual controversy, adversary in character, seriously involving the rights of the parties" in the following particulars: (1) whether the appellees and the defendant, Graffius, are unfairly competing with plaintiff and with the corporation; (2) whether appellees and Graffius are guilty of patent infringement and injuring plaintiff's rights in the patent, in the license of September 28, 1945, and in the corporation; (3) whether appellees and Graffius broke the agreements referred to, thereby damaging plaintiff; (4) whether the corporation is infringing the patent and agreements in connection therewith; (5) as to the status and rights of the parties in and to the

agreements and assignments referred to in the amended complaint.

Next it is asserted that Hook and his attorney are seeking patent protection on a boiler which is an imitation of plaintiff's invention and, in connection with. same, presenting minor improvements which should be the property of plaintiff.

Finally, plaintiff specifically prays for a judgment declaring whether appellees and Graffius are unfairly competing with him and infringing his patent; whether the corporation by certain sales comes within the scope of the patent and its licenses and whether there has been a lack or failure of consideration with respect to the relevant agreements so as to relieve the corporation of its obligations to plaintiff and Hook. An accounting is sought from the defendants in order that plaintiff may recover his damages and losses, and recover royalties under his patent improperly obtained by Hook, and his damages as a result of improper use by Hook of confidential material. A declaration is sought regarding the status of the agreements referred to in the amended complaint. An injunction is sought against the individual defendants restraining "further acts of patent infringement and unfair competition." An order is requested compelling assignment by appellees of their interest in the contracts, the patent, and in any alleged inventions, patent applications and patents relating to the "imitation Hook and Miller gas fired boiler."

The Court below found that there was no diversity jurisdiction with respect to the appellees. The patent infringement phase of the litigation was dismissed as to the appellees because "it does not appear that any of them have a regular and established place of business here [Eastern District Pennsylvania]."

The most important problem for our consideration is whether Section 1392(a) of Title 28 United States Code Annotated, 1948 revision [1] governs the venue of patent infringement litigation as is asserted by appellant. That section reads: "Any civil action, not of a local nature, against de-fendants residing in different districts in the same State, may be brought in any of such districts." Appellant contends that this language overrides the mandate of Section 1400(b) of the new Title 28, which states that: "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and *has a regular and established place of business.*" (Emphasis supplied.)

Section 1400(b) stems directly from its forerunner, Section 109, United States Code, 1940 Edition, Section 48 of the Judicial Code of 1911. The Reviser's Notes leave no doubt as to this. It is there stated that 1400(b) "is based on section 109 of title 28, U.S.C., 1940 ed." The pertinent portion of that section read: "In suits brought for the infringement of letters patent the district courts of the United States shall have jurisdiction, in law or in equity, in the district of which the defendant is an inhabitant, or in any district in which the defendant, whether a person, partnership, or corporation, shall have committed acts of infringement *and have a regular and established place of business.*" (Emphasis supplied.) The Notes point out that 1400 (b) differs from Section 109 only in the following minor instances: (1) "Words 'civil action' were substituted for 'suit,' and words 'in law or in equity,' after 'shall have jurisdiction' were deleted, in view of rule 2 of the Federal Rules of Civil Procedure"; (2) "Words in subsection (b) 'where the defendant resides' were substituted for 'of which the defendant is an inhabitant'"; (3) "Words 'whether a person, partnership, or corporation' before 'has committed' were omitted as surplusage." The Reviser's Notes also make it very clear that 1392(a) is based on Section 113 of Title 28 United States Code, 1940 edition, Section 52 of the Judicial Code of 1911. Appellant contends that both 1392 (a) and 1400(b) are differently worded and in different order and sequence from their predecessors but the changes are directed solely to clarification and compactness;

---

1. **Act of June 25, 1948, c. 646, 62 Stat. 935, effective September 1, 1948.**

they in no way lessen the independence of 1400(b) from 1392(a).

■ Beyond all doubt, until the adoption of the new Title 28 in 1948, Section 109 was "the exclusive provision controlling venue in patent infringement proceedings." Stonite Products Co. v. Melvin Lloyd Co., 315 U.S. 561, 563, 62 S.Ct. 780, 781, 86 L.Ed. 1026. In that decision, the Supreme Court expressly rejected the argument that Section 113 supplemented Section 109 because of its prior enactment and that the sections were complementary. Stonite Products Co. v. Melvin Lloyd Co., supra, 315 U.S. at pages 566, 567, 62 S.Ct. 780. The Reviser's Notes make it evident that today, 1400(b) stands in the same situation as did Section 109 at the time of the Stonite opinion in 1942 and that the Stonite case is just as much in point now as then. Therefore, since it did not appear on the motion to dismiss that any of the appellees have "a regular and established place of business" in the Eastern District of Pennsylvania, the Court of that District had no jurisdiction over them under the controlling Section 1400(b).

On the question of diversity, the District Court found that appellant's claims against Hook and the other individual defendants were based on alleged acts against the corporation[2] which adversely affected his interest in the corporation and his royalties from that source. It was further found that in the relief sought against the corporation, Hook had the same interest as the plaintiff. The Court then held: "It thus appears that when the parties are properly rearranged Ackerman finds himself with a Pennsylvania resident or citizen on his side upon every issue or cause of action in which the three defendants who filed this motion are involved. Jurisdiction in such causes of action is based upon diversity and must fall with the rearrangement."

■ The fact findings regarding plaintiff's various claims are supported by the above referred to statements in the amended complaint.[3] The legal principle motivating the District Court in realigning the parties according to the real objectives of the litigation is long settled law. As Mr. Justice Frankfurter said in City of Indianapolis v. Chase National Bank, 314 U. S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47:

"To sustain diversity jurisdiction there must exist an 'actual', Helm v. Zarecor, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77, 'substantial', Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 81, 41 S.Ct. 39, 41, 65 L.Ed. 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Strawbridge v. Curtiss, 3 Cranch 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute'. City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co., 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest', City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit,

2. There is nothing in the complaint to indicate hostile control of the corporate defendant. Cf. Koster v. Lumbermens Mutual Cas. Co., 330 U.S. 518, 523, 67 S.Ct. 828, 91 L.Ed. 1067. It is asserted in appellees' brief that appellant is majority stockholder of the corporation but we fail to find justification for that statement within the record.

3. If Hook were the sole defendant, diversity would exist. In that situation, the present venue would be wrong as Hook is a resident of the Western District of Pennsylvania. This would also apply to the other appellees, both of whom are residents of the Western District of Pennsylvania. From the standpoint of *venue alone*, if the corporation was eliminated as a party, appellant could maintain an action against Graffius and appellees in the Eastern District, Section 1392(a) of Title 28, United States Code Annotated, 1948 revision. We express no opinion as to whether in that suit, appellant would have a cause of action against such defendants or any of them. If Graffius were stricken as a defendant the venue would again fall.

Title & Trust Co., supra, 197 U.S. at page 181, 25 S.Ct. at page 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purpose of the suit', East Tennessee, V. & G. R. v. Grayson, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the 'primary and controlling matter in dispute', Merchants' Cotton-Press & Storage Co. v. Insurance Co., 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court."

Appellant urges that the corporation is a non-exclusive licensee and therefore is not a proper party plaintiff. The District Court found specifically that the original non-exclusive license to the corporation given by the agreement of August 7, 1939, attached to amended complaint as "Exhibit A", was made exclusive by the agreement of September 28, 1945. The language of paragraph 1 of that document bears this out. It reads: "1. Hook and Ackerman hereby give and grant the Company *the exclusive right and license* (subject to the outstanding license of January 28, 1942 to Sears, Roebuck & Co.) to manufacture, use and sell, and to license others so to do, heater boilers covered by and coming under United States letters patent 2,247,796, granted July 1, 1941." (Emphasis supplied).

Appellant suggests that the outstanding license to Sears, Roebuck entirely defeats the exclusiveness of the grant. We see no merit to that argument. The license was obviously intended to and does partake of the nature of an exclusive general arrangement. It is the subject of an elaborate agreement which carefully works out royalties thereunder and for which purpose the corporation agrees to maintain proper books. It provides that if royalties to Hook for any one year do not total $5,000, "Hook at his option may terminate the *exclusive* features of this license, and the Company shall then have a *non-exclusive* license * * *." (Emphasis supplied). By the same contract the Sears, Roebuck

agreement was itself assigned to the corporation with the latter to receive all royalties paid under it "so long as Hook is paid the royalties due hereunder." By the agreement the corporation had the power to grant licenses to others; had the right to sue in its own name in event of unlawful use of the invention in question and to retain any recovery provided it kept up its agreed royalty payments. The agreement was for the life of the patent. Certainly all this does not indicate that the corporation's interest was that "merely * * * of a non-exclusive licensee" as in Contracting Division, A. C. Horn Corporation v. New York Life Insurance Co., et al., 2 Cir., 113 F.2d 864, 865, which is relied upon by appellant.

The judgment of the District Court will be affirmed.