**Richard WOLFE, Plaintiff,**

v.

**UNITED ARTISTS CORP., and its Divisions, Subsidiaries and Affiliates: United Artists Music Co., Inc., Big 3 Music Corp. and Hastings Music Corp. and its Agents and Assigns, Defendants**

**and**

**Bayberry Music, Inc. and Bald Eagle Music, derivatively.**

**Civ. A. No. 83–3809.**

United States District Court, E.D. Pennsylvania.

Dec. 14, 1983.

Janet S. Kole, Philadelphia, Pa., for defendants.

Richard Wolfe, pro se.

## MEMORANDUM AND ORDER

KELLY, District Judge.

Plaintiff, Richard Wolfe, pro se, brings this action under the Copyright Act, 17 U.S.C. § 101 et seq. (1980) (specifically sections 106–118, inclusively; §§ 401, 405 and 406) and assumpsit claims under 28 U.S.C. § 1331; §§ 1332 and 1338 (1976). Plaintiff in this action is also a plaintiff in a similar action against United Artists *et al.* in the Southern District Court of New York [1] (hereinafter "WOLFE I"). That action was dismissed by Judge Thomas P. Griesa for lack of subject matter jurisdiction (on July 21, 1983), holding specifically, that the purported copyright infringement claims did not arise under the Copyright Act, 17 U.S.C. Two weeks after the Court's opinion dismissing plaintiff's Southern District of New York action he filed a notice of appeal and filed this action in the Eastern District Court of Pennsylvania.

For the most part the complaint herein restates the claims alleged in WOLFE I and similar claims in relation to events since WOLFE I was commenced. It is alleged in the complaint that defendants are New York corporations (Complaint, para. 2); that plaintiff is "President and Shareholder" of Bayberry, a New York corporation, which owns all of the stock of "derivative" defendant Bald Eagle Music, a New York "resident" (Id., para. 3); that since the commencement of WOLFE I, defendants have "printed and distributed" revised editions of a work entitled "RICHARD WOLFE'S LEGIT PROFESSIONAL FAKE BOOK" (the "FAKE BOOK") designated as "R3" and "R4" (hereinafter referred to as the "FAKE BOOK–R3" and the "FAKE BOOK–R4" respectively) (Id., para. 9); that, as alleged in WOLFE I, copies of the musical composition entitled TWAS THE NIGHT BEFORE CHRISTMAS ("TWAS") included in the FAKE BOOK omitted the name of plaintiff as composer thereof and erroneously designated defendant Robbins Music Corp. ("ROBBINS") as the owner of copyright therein (Id., para. 10); that defendants have "refused to account: for the use and sales and income" attributable to sales of copies of TWAS contained in the FAKE BOOK (Id., para. 11); that defendants "obtained" an "original copyright" in TWAS on behalf of plaintiff and Bayberry in 1967 (Id., para. 13); that a work entitled "PROFESSIONAL FAKE BOOK" (the "PRO

---

1. Civil Action No. 80–6957.

BOOK") is included in the FAKE BOOK (Id., para. 14); that the PRO BOOK, as included in the FAKE BOOK, omits plaintiff's name as author thereof and erroneously designated Robbins as the owner of all copyrights therein (Id., para. 15); that defendants failed to account for the proceeds of sales of the FAKE BOOK (Id., para. 16); that pursuant to written agreements dated September 30, 1970 (Id., Ex. 3) and December 7, 1979 (Id., Ex. 2) defendants continued to collect royalties accruing to Bayberry and Bald Eagle "after expiration of the grant of rights permitting them to collect" such (Id., para. 18); that defendants concealed this collection of royalties "by failing to provide royalty statements, as required by agreement" (Id., para. 19); that defendants "refused to account to or pay over to Bayberry and or Wolfe monies wrongfully collected" for royalties after June 30, 1980 (Id., para. 20); that defendants have continued to collect royalties accruing to Bayberry and have failed to pay royalties to plaintiff (Id., paras. 21, 22); and that defendants have failed to maintain accurate accounts of sales and royalties "as more fully set forth in plaintiff's [claims for relief]" (Id., para. 23).

## CLAIMS FOR RELIEF

The first claim alleges that after September, 1981, defendants 'infringed plaintiff's copyright in TWAS by omitting from copies of TWAS contained in the FAKE BOOK–R3 the name of plaintiff as the author thereof and by including the name of Robbins as the owner of the copyright therein. Further that defendants' music companies were sold to CBS, Inc., and CBS has reprinted and reissued the infringing book but has corrected the erroneous designations of authorship and owner of copyright and has agreed to pay for such uses.

The second claim repeats the first claim with respect to the FAKE BOOK–R4.

The third and fourth claims simply restate the first and second claims. The pro se plaintiff added citations to code sections in the latter claims, evidently, now knowing whether or not they were necessary or the pertinent sections.

The fifth and sixth claims are common law claims for defendants' failure to account for monies claimed to be due plaintiff and Bayberry from sales of the FAKE BOOK–R3 and the FAKE BOOK–R4.

The seventh and eighth claims allege that after September, 1981 defendants infringed the copyright in the PRO BOOK by omitting from copies of the PRO BOOK included in the FAKE BOOK–R3 the name of the plaintiff as the author thereof and by including the name of Robbins as the owner of the copyright therein.

The ninth claim is a common law claim for an alleged failure to account for monies claimed to be due plaintiff and Bayberry for sales of the FAKE BOOK–R3.

The tenth claim for relief restates the violation alleged in the seventh claim (since June 1982). The eleventh and twelfth claims restate the eighth and ninth claims respectively, i.e., by designating Robbins as the copyright owner and not accounting to plaintiff and Bayberry for such pursuant to 17 U.S.C. § 406(a)(2).

The thirteenth claim appears to be a common law breach of contract claim for failure to pay royalties pursuant to the agreements of September 30, 1970, December 7, 1979, and June 30, 1980.

The fourteenth claim is a breach of contract claim for defendants' failure to keep accurate records, regularly account and for advances charged to such accounts.

Before the Court is defendants' motion to dismiss the Complaint on the ground of lack of subject matter jurisdiction, pursuant to Fed.R.Civ.P. 12(b)(1) and, alternatively, on the ground that diversity jurisdiction under 28 U.S.C. § 1332 is lacking.[2]

---

**2.** If the court grants defendants' motion to dismiss for lack of jurisdiction over plaintiff's alleged Copyright claims "the district court lacks power to entertain the pendent claims," *Weaver v. Marine Bank,* 683 F.2d 744, 749 (3rd Cir.

1982). "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct.

Plaintiff's Complaint fails to state a claim "arising under" the Copyright Act, 28 U.S.C. § 1338. The pertinent part provides:

> "The district courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to ... copyright....." 28 U.S.C. § 1338(a).

Plaintiff also cites 28 U.S.C. § 1331 as a basis for subject matter jurisdiction (Complaint, para. 4). That statute provides in pertinent part:

> "The district courts shall have original jurisdiction of all civil actions ... [arising under the ... laws ... of the United States]", 28 U.S.C. § 1331.

Plaintiff makes reference to one "law of the United States," i.e., the Copyright Act, 17 U.S.C., thus the discussion is limited to the former jurisdictional statute 28 U.S.C. § 1338, which relates to actions "arising under" the Copyright Act.

Judge Friendly in a often quoted Second Circuit opinion, *T.B. Harms Co. v. Eliscu*, 339 F.2d 823, 828 (2d Cir.1964) synthesised the reach of federal jurisdiction under the Copyright Act.

> "Mindful of the hazards of formulation in this treacherous area, we think that an action "arises under" the Copyright Act if and only if the complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement or for the statutory royalties for record reproduction, ... or asserts a claim requiring construction of the Act, ... or, at the very least and perhaps more doubtfully, presents a case where a distinctive policy of the Act requires that federal principles control the disposition of the claim. The general interest that copyrights, like all other forms of property, should be enjoyed by their true owner is not enough to meet this last test."

The Copyright Act section 501(a) identifies a copyright infringer as one who "violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118." [3] See H.R.Rep. No. 94–1476, 94th Cong., 2d Sess. 158–60 (1976), U.S.Code Cong. & Admin.News 1976, pp. 5659, 5774.

The "exclusive rights in copyrighted works" are set forth in 17 U.S.C. § 106 as follows:

> Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:
>
> (1) to reproduce the copyrighted work in copies or phonorecords;
>
> (2) to prepare derivative works based upon the copyrighted work;
>
> (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; and
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly.

■ Plaintiff is under the opinion that any intrusion upon his copyrighted works is a violation of this specific remedial statute. This is not so. If defendants' acts do "not conflict with an exclusive right conferred by statute, it is no infringement of the holders rights." *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 155, 95 S.Ct. 2040, 2043, 45 L.Ed.2d 84 (1975). *See*

---

1130, 1139, 16 L.Ed.2d 218 (1966). On the other hand if defendants' motion is denied, *United Mine Workers, supra,* 383 U.S. at 725, 86 S.Ct. at 1138, is authority for jurisdiction over the pendent state claims. "A federal court may entertain state law counts arising out of a 'common nucleous of operative fact' on which a federal

cause of action is based, even though jurisdiction would otherwise be present."

**3.** Also, section 602 of the Act makes the unauthorized importation from abroad of copies or phonorecords infringement under specific circumstances.

*also, Fortnightly Corp. v. United Artists*, 392 U.S. 390, 393, 88 S.Ct. 2084, 2085, 20 L.Ed.2d 1176 (1968). The caselaw that has succeeded the Copyright Act has been very specific stating that: "(1) nonpayment of royalties; (2) failure to give plaintiff proper authorship credit in the Works ...; and (3) failure to pay plaintiff [his] share of revenue derived from sales ... are not Copyright Act claims." *Stepdesign, Inc. v. Research Media, Inc.*, 442 F.Supp. 32, 33 (S.D. N.Y.1977). But instead these claims arise from contractual transactions between the plaintiff and defendants. The court in *Stepdesign, Inc.* dismissed the complaint for lack of subject matter jurisdiction, concluding "that basically this is an action for breach of contract ..." 442 F.Supp. at 33.

■ The alleged "infringing" acts of defendants, as set forth in the Complaint, fall into three categories:

(1) Failure to give plaintiff credit as the author of TWAS and the PRO BOOK and incorrect designation of Robbins as the owner of the copyrights therein (first, second, third, fourth, seventh, eighth, tenth and eleventh claims);

(2) Failure to properly account for royalties, including as required by various written agreements (fifth, sixth, ninth, twelfth and fourteenth claims); and

(3) Conversion of Bayberry's mechanical royalties (thirteenth claim).

In WOLFE I the court specifically held that the acts identified above do not constitute copyright infringement, *Richard Wolf v. United Artists Music Co., et al.*, No. 80–6957, Slip Op. at 8–10 (2nd Cir., July 21, 1983):

"Nowhere in the revised Copyright Act does a holder appear to have an exclusive right in use of the *copyright notice*, nor is it infringement to remove a credit to authorship in publishing a work pursuant to an otherwise valid licensing agreement.

\* \* \* \* \* \*

Wolfe seeks an accounting for royalties which he claims are due him under a series of licensing agreements dating back to 1967. The copyright claims relate to alleged breaches of these agreements, viz., the obligation to properly place Wolfe's or Bayberry's copyright notice on published materials. These claims are not cognizable as an infringement under the statute. Either the agreements required the licensees to carry Wolfe's copyright and notice of authorship, or they permitted Robbins and Big 3 to print the songs under their copyright notice. It makes no difference *insofar as the copyright laws are concerned* so long as the defendant's use was not in derogation of Wolfe's exclusive rights as enumerated in 17 U.S.C. § [106], and no such allegation is made. (emphasis supplied)."

Whatever obligations defendants may have had to plaintiff or Bayberry concerning accountings, payments, or copyright notices, those obligations were the subject of the various contractual agreements between them. A determination as to whether or not defendants breached any such obligations to plaintiff or Bayberry can only be made by reference to these agreements, not to the copyright law.

Plaintiff's repeated references in his Complaint to 17 U.S.C. § 406(a) of the Copyright Act, do not transform his purported breach of contract claims into violations of the Copyright Act's exclusive rights provision, 17 U.S.C. § 106. Section 406(a) of the Act provides in pertinent part that where the copyright notice contains an error with respect to the owner of copyright, "the person named in the notice is liable to account to the copyright owner for all receipts from *transfers or licenses* purportedly made under the copyright by the person named in the notice." (emphasis supplied.) Nowhere is it alleged in the Complaint that defendants made "transfers or licenses" under the copyright in the FAKE BOOK. Plaintiff's "accounting" claims are limited to alleged failures by defendants to pay royalties to plaintiff or

Bayberry pursuant to various agreements among the parties (Complaint, ¶ 19, 97).

Therefore, plaintiff has failed to state a claim under the Copyright Act and those alleged claims are dismissed for lack of subject matter jurisdiction.

Plaintiff in his Complaint can not establish diversity jurisdiction under 28 U.S.C. § 1332.[4] It is clear that plaintiff named Bald Eagle and Bayberry New York Corporations which he owns and controls as "derivative" defendants because they would destroy diversity and preclude jurisdiction in federal court. The Complaint establishes conclusively that Bayberry is the copyright owner (Complaint, paras. 10, 15, 28, 29 and 64). Bayberry and plaintiff have allegedly been denied royalties (Id., paras. 53, 57, 72 and 82), and that Bayberry is a party to all of the relevant agreements between plaintiff and defendants (Id., Exhibits 2, 3 and 4). The repeated references to "Wolf/Bayberry" (Id., paras. 20, 53, 57, 72 and 82) serve to demonstrate the plaintiffs and named derivative defendants identical interests.

"The realignment of the parties according to their interests is a significant issue in determining jurisdiction in diversity cases." *In Re Penn Central Securities Litigation*, 335 F.Supp. 1026, 1041 (E.D.Pa. 1971) (citation omitted). "After a proper alignment of the parties to reflect their actual interests, there must be complete diversity between the plaintiffs on one hand and the defendants on the other ...." *Taussig v. Wellington Fund, Inc.*, 187 F.Supp. 179, 180 (D.Del.1960), aff'd, 313 F.2d 472 (3rd Cir.1963).

Justice Frankfurter wrote in *City of Indianapolis v. Chase National Bank*, 314 U.S. 63, 69, 62 S.Ct. 15, 17, 86 L.Ed. 47 (1941):

"To sustain diversity jurisdiction there must exist an 'actual,' *Helm v. Zarecor*, 222 U.S. 32, 36, 32 S.Ct. 10, 11, 56 L.Ed. 77 'substantial,' *Niles-Bement-Pond Co. v. Iron Moulders' Union*, 254 U.S. 77,

81, 41 S.Ct. 39, 41, 65 L.Ed.2d 145, controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. *Strawbridge v. Curtiss*, 3 Cranch 267, 2 L.Ed. 435. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants. It is our duty, as it is that of the lower federal courts, to 'look beyond the pleadings, and arrange the parties according to their sides in the dispute.' *City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, 197 U.S. 178, 180, 25 S.Ct. 420, 421, 49 L.Ed. 713. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary 'collision of interest,' *City of Dawson v. Columbia Ave. Sav. Fund, Safe Deposit, Title & Trust Co.*, supra, 197 U.S. at ¶ 181, 25 S.Ct. at ¶ 421, 49 L.Ed. 713, exists, is therefore not to be determined by mechanical rules. It must be ascertained from the 'principal purposes of the suit,' *East Tennessee, V. & G.R. v. Grayson*, 119 U.S. 240, 244, 7 S.Ct. 190, 192, 30 L.Ed. 382, and the 'primary and controlling matter in dispute,' *Merchants' Cotton-Press & Storage Co. v. Insurance Co.*, 151 U.S. 368, 385, 14 S.Ct. 367, 373, 38 L.Ed. 195. These familiar doctrines governing the alignment of parties for purposes of determining diversity of citizenship have consistently guided the lower federal courts and this Court.' "

Upon all of the foregoing it is clear that Bayberry and its wholly owned subsidiary Bald Eagle are completely united in interest with plaintiff Wolfe and should be realigned with him as plaintiffs precluding jurisdiction in this Court under 28 U.S.C. § 1332(a) for lack of diversity jurisdiction because Bayberry is a New York Corporation as is defendant United Artists Corp.

**4.** 28 U.S.C. § 1332(a) provides in pertinent part:
The district courts shall have original jurisdiction of all civil actions where the matter in

controversy exceeds the sum or value of $10,-000.00 exclusive of interest and costs and is between—(1) citizens of different states;
. . .