[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-10120
_____

D.C. Docket No. 1:14-cv-22463-JLK

FIRST MERCURY INSURANCE COMPANY,
a corporation,

Plaintiff-Appellant,

versus

EXCELLENT COMPUTING DISTRIBUTORS, INC.,
a corporation,
CRIME STOPPERS SECURITY & INVESTIGATION, INC.,
a corporation,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 20, 2016)

Before MARCUS and JILL PRYOR, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

In this insurance coverage dispute, plaintiff-insurer First Mercury Insurance Company ("First Mercury") sought a declaratory judgment that it had no duty to indemnify defendant-insured Crime Stoppers Security & Investigation, Inc. ("Crime Stoppers") for tort claims in a state-court lawsuit brought by Excellent Computing Distributors, Inc. ("Excellent Computing") against Crime Stoppers. The district court declined to exercise jurisdiction over First Mercury's declaratory judgment action. First Mercury appeals, contending, *inter alia*, that the district court abused its discretion in declining to exercise jurisdiction over this insurance coverage dispute. After a careful review of the record and the parties' briefs, and with the benefit of oral argument, we vacate and remand.

## I.

Excellent Computing owned a warehouse, located within a larger commercial complex (the "Commercial Center"), in which it stored valuable computer equipment. Property owners within the Commercial Center were part of a condominium association (the "Association"). The Association hired Crime Stoppers to monitor the entire premises including Excellent Computing's

---

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

warehouse.  Excellent Computing also hired an alarm company to dispatch the police if a burglary, theft, or other unusual event triggered the alarm system.

Despite these security precautions, Excellent Computing suffered vandalism and a significant loss of merchandise at its warehouse.  According to Excellent Computing, someone deactivated its alarm system; because the alarm company failed to detect the deactivation, it also failed to dispatch the police when the alarm system went off line.  A police report characterized the incident as a burglary and estimated the value of stolen property at just over $2 million.

Excellent Computing filed a complaint in Florida state court against the alarm company and the Association, alleging that "an unauthorized entry into the commercial warehouse" resulted in "the theft of very valuable merchandise which had been located inside."  Compl. at 3, ¶ 11, *Excellent Computing Distribs., Inc. v. Guardian Alarm of Fla., LLC*, No. 09-32201-CA-01 [15] (Fla. Cir. Ct. Apr. 21, 2009).[1]  In particular, Excellent Computing alleged that the defendants had "fail[ed] to note that in broad daylight, unknown third parties broke into the premises[,] . . . deactivated the alarm systems, [and] stole a large amount of computer related equipment."  *Id.* at 3, ¶ 13; *see also id.* at 4-5, ¶ 19.

The Association then filed a third-party complaint against Crime Stoppers, which, in turn, tendered the complaint to its insurer, First Mercury.  Crime

---

[1] This document is available at district court docket entry 14-1.  In this opinion, citations to "Doc." refer to docket entries in the district court record in this case.

3

Stoppers demanded coverage under its commercial general liability policy (the "policy"), which had a general aggregate limit of $2,000,000 and a per-occurrence limit of $1,000,000.  First Mercury denied coverage, citing an exclusion in the policy for "any claim, demand or suit alleging damages arising out of actual or alleged theft, burglary, robbery, mysterious disappearance, inventory shortage or inventory shrinkage whether caused, aggravated or exacerbated by . . . [a]cts committed by known or unknown third parties."  Policy at 40 (Doc. 1-5).

Crime Stoppers then impleaded First Mercury, requesting a declaratory judgment that First Mercury had a duty to defend and indemnify it for any liability arising from the disappearance of Excellent Computing's inventory.  Ultimately, the Association prevailed in Excellent Computing's lawsuit, rendering the Association's third-party complaint against Crime Stoppers moot.  In turn, Crime Stoppers voluntarily dismissed its claims against First Mercury without prejudice.

Excellent Computing then filed an amended complaint in the Florida state court action, naming only Crime Stoppers as a defendant.  The amended complaint downplayed the loss of property, eliminating the terms "theft" "broke into," and "stole."  Instead, the amended complaint alleged that "there had been an unauthorized entry" into Excellent Computing's warehouse during which "unknown third parties . . . *removed*" the computer equipment.  Second Am. Compl. at 3-4 ¶¶ 11, 14, *Excellent Computing Distribs., Inc. v. Crime Stoppers*

4

*Sec. & Investigation, Inc.*, No. 09-32201-CA-01 [15] (Fla. Cir. Ct. Dec. 19, 2011) (emphasis added).[2]

Crime Stoppers tendered the amended complaint to First Mercury. This time, First Mercury agreed to defend Crime Stoppers under the terms of the policy, subject to a complete reservation of rights. Excellent Computing's case against Crime Stoppers continued in state court.[3]

As Excellent Computing's case proceeded, First Mercury filed this declaratory judgment action against Excellent Computing and Crime Stoppers in the United States District Court for the Southern District of Florida, seeking a declaration that it had no duty to indemnify Crime Stoppers for any judgment in Excellent Computing's underlying negligence suit. In particular, First Mercury sought a declaratory judgment that the exclusion described above—regarding claims arising out of actual or alleged thefts, burglaries, robberies, or mysterious disappearances—applied "under the actual facts of this case," and thus First Mercury had no duty to indemnify Crime Stoppers for the claims Excellent

---

[2] *See* Compl. Ex. A (Doc. 1-4).

[3] Excellent Computing's case against Crime Stoppers was set for a jury trial beginning May 2, 2016. Order, *Excellent Computing Distribs., Inc. v. Crime Stoppers Sec. & Investigation, Inc.*, No. 09-32201-CA-01 [15] (Fla. Cir. Ct. Feb. 6, 2016). The court recently granted a continuance until September 2016. *See* Order, *Excellent Computing Distribs., Inc.*, No. 09-32201-CA-01 [15] (Fla. Cir. Ct. Apr. 5, 2016); Unopposed Mot. for Continuance, *Excellent Computing Distribs., Inc.*, No. 09-32201-CA-01 [15] (Fla. Cir. Ct. Mar. 23, 2016).

Computing asserted against it.  Compl. at 7-8 (Doc. 1).  First Mercury sought no relief regarding its duty to defend.

Both Excellent Computing and Crime Stoppers filed motions to dismiss. Excellent Computing urged the district court to decline to exercise its jurisdiction, arguing, *inter alia*, that the declaratory judgment action depended in part on the outcome of Excellent Computing's underlying action, and both cases involved overlapping issues of fact.  Crime Stoppers argued that the district court lacked diversity jurisdiction altogether because of an insufficient amount in controversy.

The district court granted the defendants' motions and dismissed the action without prejudice.  The court never addressed Crime Stoppers's amount-in-controversy argument but instead declined to exercise jurisdiction for two reasons. First, the court explained that "[b]ecause the underlying state action [was] unresolved, there [was] no way to know whether or to what extent Crime Stoppers [would] ultimately be held liable for Excellent Computing's losses."  Order at 3 (Doc. 18).  The court emphasized that First Mercury sought only a declaration regarding its duty to indemnify, not its duty to defend.  And the district court supported its conclusion by citing to another district court case stating "[i]t is simply inappropriate to exercise jurisdiction over an action seeking a declaration of the plaintiff's indemnity obligations absent a determination of the insureds' liability."  *Id.* (quoting *Emp'rs Mut. Cas. Co. v. All Seasons Window & Door Mfg.,*

6

*Inc.*, 387 F. Supp. 2d 1205, 1211-12 (S.D. Ala. 2005)).  Second, the court noted that "significant factual questions necessary for a resolution of First Mercury's declaratory judgment action are at issue in the state [court] action, and have yet to be resolved."  *Id.*  The court did not identify these factual questions.

First Mercury filed a motion for reconsideration under Federal Rule of Civil Procedure 60(b), arguing, in part, that the district court mistakenly concluded that the two cases presented overlapping factual questions.  The court denied First Mercury's Rule 60(b) motion without addressing this argument.  Instead, the district court reiterated that it declined to exercise jurisdiction to decide "obligations as to liability that may never arise."  Order at 4 (Doc. 23).  First Mercury timely appealed.

## II.

We consider whether the district court had diversity jurisdiction and, if so, whether the court abused its discretion in declining to exercise its jurisdiction over this action.

## A.

Crime Stoppers argues that First Mercury failed to establish the threshold "amount in controversy" required to invoke federal court jurisdiction in diversity cases under 28 U.S.C. § 1332(a).  According to Crime Stoppers, because First Mercury believes it has no obligation under the insurance policy to indemnify

Crime Stoppers for Excellent Computing's claims, First Mercury's good-faith valuation of its declaratory judgment action must be $0. We easily reject this argument.

A federal court has diversity jurisdiction over an action where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties have complete diversity of citizenship. 28 U.S.C. § 1332(a). In a declaratory judgment action, "[f]or amount in controversy purposes, the value of . . . declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1268 (11th Cir. 2000) (internal quotation marks omitted). "Stated another way, the value of declaratory relief is the monetary value of the benefit that would flow to the plaintiff if the relief he is seeking were granted." *S. Fla. Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) (internal quotation marks omitted and alteration adopted). Thus, when an insurer seeks a judgment declaring the absence of liability under a policy, the value of the declaratory relief to the plaintiff-insurer is the amount of *potential* liability under its policy. *See Stonewall Ins. Co. v. Lopez*, 544 F.2d 198, 199 (5th Cir. 1976)[4] (concluding the amount in controversy included both the

---

[4] Decisions of the former Fifth Circuit rendered prior to close of business on September 30, 1981, are binding on this Court. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

insurance company's potential liability and attendant costs associated with defending an underlying action against the insured).

The amount in controversy here exceeds $75,000.  In the underlying state court action, Excellent Computing seeks to recover from Crime Stoppers for the loss of more than $2,000,000 worth of computer equipment.  First Mercury's policy covering Crime Stoppers during the relevant time contained a $2,000,000 aggregate limit and a $1,000,000 per-occurrence limit.  Thus, if First Mercury loses its declaratory judgment action, it may face $1,000,000 or more in coverage liability.  Put differently, the "value of the object of this litigation"—a judgment declaring First Mercury free from any indemnification obligation under its policy—far exceeds $75,000.  First Mercury therefore satisfied § 1332(a)'s amount-in-controversy requirement, and the district court had subject-matter jurisdiction over the action.

## B.

We next turn to whether the district court erred in declining to exercise its jurisdiction.  The Declaratory Judgment Act grants federal courts the discretion to "declare the rights and other legal relations of any interested party seeking such declaration."  28 U.S.C. § 2201(a).  It is well established that the Declaratory Judgement Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so."  *Ameritas Variable Life Ins. Co. v.*

9

*Roach*, 411 F.3d 1328, 1330 (11th Cir. 2005) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).  Accordingly, we review for abuse of discretion a district court decision declining to exercise jurisdiction over a declaratory judgment action.  *Id.*

Although this standard of review is deferential, the district court's discretion has its limits.  A district court abuses its discretion when it commits a clear error of judgment or a misapplication of the law.  *See id.*  For example, a district court can abuse its discretion when it:  (1) fails to consider a relevant factor that should have been given significant weight, (2) considers and gives significant weight to an irrelevant or improper factor, or (3) considers "all proper factors, and no improper [factors] . . . but . . . , in weighing those factors, commits a clear error of judgment."  *Id.* (internal quotation marks omitted).  We also find abuse of discretion "when neither the district court's decision nor the record provide[s] sufficient explanation to enable meaningful appellate review."  *Cox Enters., Inc. v. News-Journal Corp.*, 510 F.3d 1350, 1360 (11th Cir. 2007).

In *Ameritas*, we provided the following non-exhaustive list of factors for district courts to consider when deciding whether to exercise jurisdiction over a declaratory judgement action where an underlying state court action involves some of the same issues and parties:

> (1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;

10

(2) whether the judgment in the federal declaratory action would settle the controversy;

(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;

(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"—that is, to provide an arena for a race for *res judicata* or to achieve a federal hearing in a case otherwise not removable;

(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;

(6) whether there is an alternative remedy that is better or more effective;

(7) whether the underlying factual issues are important to an informed resolution of the case;

(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and

(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Ameritas*, 411 F.3d at 1331.  We noted that not every factor will be relevant in every case.  *See id.*

Although in *Ameritas*, we reviewed the district court's discretionary dismissal of a federal declaratory judgment action in the face of a parallel state proceeding—one involving substantially the same parties and substantially the

11

same issues[5]—we have never held that the *Ameritas* factors apply only when reviewing parallel actions. Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues. Rather, the district court must weigh all relevant factors in this case, even though the state and federal actions were not parallel. *See id.*

Here, the district court primarily rested its discretionary decision on the possibility that Crime Stoppers's liability to Excellent Computing—and thus First Mercury's coverage liability—will never arise. We acknowledge that "whether the judgment in the federal declaratory action would settle the controversy" is one factor that a district court can consider in deciding whether to exercise its discretion. *Id.* But this factor is insufficient, standing alone, to close the courthouse door; it must be weighed against the potential that an insurance coverage determination could "serve a useful purpose in clarifying the legal relations at issue." *Id.*; *see, e.g.*, *Britamco Underwriters, Inc. v. Cent. Jersey Invs., Inc.*, 632 So. 2d 138, 141 (Fla. 4th DCA 1994) (recognizing the potential benefits of a coverage determination on the duty to indemnify before the conclusion of an underlying negligence suit, including allowing for intelligent decisionmaking

---

[5] *See Ambrosia Coal & Constr. Co. v. Pagés Morales*, 368 F.3d 1320, 1330 (11th Cir. 2004) (explaining in the context of abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), that a parallel proceeding is one involving substantially the same parties and issues).

12

regarding settlement).  There is no indication that the district court considered any potential benefits.  We thus conclude that the district court abused its discretion by failing to consider and weigh the potential benefits of a prompt liability determination.

The district court's only remaining reason for declining to exercise jurisdiction was that "significant factual questions" at issue in the underlying negligence suit were necessary for the resolution of this declaratory judgment action.  Order (Doc. 18 at 3).  Some factual questions in the state court action may be "important to an informed resolution of the case." *Ameritas*, 411 F.3d at 1331.  But the court failed to identify which factual questions it was considering or explain why these questions tip the scale in favor of dismissal.  Because "neither the district court's decision nor the record provide sufficient explanation to enable meaningful appellate review," *Cox*, 510 F.3d at 1360, we conclude that the district court abused its discretion.

## III.

The district court abused its discretion by declining to exercise jurisdiction without considering adequately the relevant factors.  We do not foreclose the dismissal of this action without prejudice, however, if the district court clearly delineates its basis for doing so, and its decision remains within the bounds of the court's broad discretion.  Thus, we vacate and remand to the district court for

13

consideration of the *Ameritas* factors and any other facts it deems relevant; we express no opinion about whether the district court should exercise its discretion to hear the declaratory judgment action.

**VACATED** and **REMANDED** for further consideration.