[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  16-12015
_____

D.C. Docket No. 1:13-cv-00086-TCB

ST. PAUL FIRE AND MARINE INSURANCE COMPANY,

Plaintiff - Counter Defendant,

versus

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA,
AMERICAN HOME ASSURANCE COMPANY,
NEW HAMPSHIRE INSURANCE COMPANY,

Defendants - Cross Defendants - Cross
Claimants - Counter Claimants - Appellees,

AMERICAN GUARANTEE & LIABILITY INSURANCE COMPANY,

Defendant - Cross Claimant - Counter
Defendant - Cross Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(May 29, 2018)

Before MARCUS and NEWSOM, Circuit Judges, and MOORE,[*] District Judge.

MARCUS, Circuit Judge:

In this battle between primary and excess liability insurance companies, American Guarantee & Liability Insurance Co. (AGLIC) appeals the district court's grant of summary judgment to American International Group, Inc. subsidiaries National Union Fire Insurance Co., American Home Assurance Co., and New Hampshire Insurance Co. (collectively, "AIG"). AGLIC claims that AIG, acting as a primary insurer, improperly allocated settlement payments between two insurance policies on behalf of their mutual insured, Imperial Sugar Co. As a consequence, AGLIC contends that AIG breached its duty to Imperial by prematurely subjecting it to excess liability. As Imperial's excess insurer, AGLIC seeks to pursue Imperial's breach-of-duty claim against AIG utilizing the doctrine of equitable subrogation.

When the case reached this Court, we asked the parties for supplemental briefing on subject matter jurisdiction. In examining diversity jurisdiction, the district court is not bound by the formal alignment of the parties provided in the pleadings. Rather, the court must align the parties according to their true interests in the litigation. *City of Indianapolis v. Chase Nat'l Bank*, 314 U.S. 63, 69 (1941); *City of Dawson v. Columbia Ave. Sav. Fund Safe Deposit, Title & Tr. Co.*, 197

---

[*] Honorable William T. Moore, Jr., United States District Judge for the Southern District of Georgia, sitting by designation.

U.S. 178, 180 (1905). In this case, because the interests of St. Paul and AGLIC were coextensive, there was an absence of complete diversity of citizenship, and the district court lacked the power to entertain the matter in the first place. Accordingly, we vacate the court's judgment and remand with instructions to dismiss.

I.

This dispute arose out of several catastrophic explosions at an Imperial Sugar Co. refinery in Port Wentworth, Georgia, which killed 14 and wounded 36 workers. The workers and their families responded by filing tort and workers' compensation claims against Imperial. The claims were handled by AIG, which provided Imperial with a $26 million general liability insurance policy ("AIG GL") and an unlimited workers' compensation insurance policy ("AIG WC"). As its defense strategy, AIG sought to arrange global settlements of the tort and workers' compensation claims. Ultimately, AIG settled 41 of the 67 claims against Imperial for roughly $28.5 million -- far less than Imperial's expected liability. However, AIG GL paid 90 percent of the global settlements (approximately $25.5 million), while AIG WC paid only 10 percent (approximately $3 million).

According to Imperial's excess insurers, St. Paul Fire & Marine Insurance Co. and AGLIC, because AIG GL was capped while AIG WC was unlimited, AIG WC should have enlarged its contributions to the settlements in order to maximize

3

the protections afforded by AIG GL. St. Paul and AGLIC contended that AIG prematurely exhausted AIG's general liability insurance policy through its lopsided settlement allocations, thereby breaching its duty to Imperial by exposing it to undue excess liability. As Imperial's excess insurers, St. Paul and AGLIC bore the burden of AIG's alleged breach, and sought to assert Imperial's cause of action through equitable subrogation.

Thus, in January 2013, St. Paul sued AGLIC and AIG subsidiaries National Union Fire Insurance Co., American Home Assurance Co., and New Hampshire Insurance Co. in the United States District Court for the Northern District of Georgia. St. Paul sought a declaration that AIG improperly exhausted its general liability policy, entitling St. Paul to recoupment of settlement and defense expenditures incurred under its excess policy. In its complaint, St. Paul arranged the parties' citizenships this way:

| Plaintiff | Defendant |
| --- | --- |
| St. Paul (MN, CT) | National Union (PA, NY) |
| | American Home (NY) |
| | New Hampshire (PA, NY) |
| | AGLIC (NY, IL) |

In February 2013, AGLIC filed an answer admitting essentially all of the allegations in St. Paul's complaint. AGLIC's answer included a cross-claim against AIG leveling the same allegations and requesting the same relief that St. Paul had sought. AGLIC claimed the district court had supplemental jurisdiction over its

4

cross-claim under 28 U.S.C. § 1367(a), since St. Paul's complaint established diversity jurisdiction, and AGLIC's cross-claim arose out of a common nucleus of law and fact.

After more than two years of discovery, AIG moved for summary judgment, alleging an absence of evidence to support St. Paul and AGLIC's claims. The district court entered summary judgment for AIG, and St. Paul and AGLIC appealed. In June 2016, St. Paul moved to voluntarily dismiss its appeal with prejudice. The Court granted the motion, leaving AGLIC as the sole appellant against AIG. Order of Dismissal, July 16, 2016 (ECF No. 34).

In October 2017, we directed the parties to file supplemental briefs addressing this Court's power to entertain the appeal. According to the parties, we retained supplemental jurisdiction over the appeal pursuant to 28 U.S.C. § 1367(a), which reads this way: "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." Although the exercise of supplemental power is discretionary, the district courts may exercise supplemental jurisdiction to consolidate closely related claims into a single proceeding in order to preserve judicial resources and avoid inconsistent judgments. *Rosado v. Wyman*, 397 U.S.

5

397, 405 (1970) (describing the "commonsense policy" of supplemental jurisdiction as being grounded on "the conservation of judicial energy and the avoidance of multiplicity of litigation"). It is also true that if there is supplemental jurisdiction at the time the suit was commenced, the court may continue to exercise that power even if the original basis for jurisdiction is later eliminated. *Id.* ("We are not willing to defeat the commonsense policy of pendent jurisdiction . . . by a conceptual approach that would require jurisdiction over the primary claim at all stages as a prerequisite to resolution of the pendent claim.").

The parties claim that, since their citizenships were completely diverse and the amount in controversy exceeded $75,000 at the time of filing, St. Paul's original complaint conferred diversity jurisdiction on the district court pursuant to 28 U.S.C. § 1332(a). They also say that the district court properly exercised supplemental jurisdiction over AGLIC's cross-claim because it was so interwoven with the complaint as to form "part of the same case or controversy." They add that St. Paul's voluntary dismissal did not divest this Court of jurisdiction, and that the exercise of supplemental jurisdiction continues to serve the interests of judicial economy and fairness. Thus, the parties reason, the district court appropriately wielded supplemental power over AGLIC's cross-claim, and this Court has supplemental jurisdiction over AGLIC's appeal as well.

II.

6

"We review questions of subject matter jurisdiction *de novo*." *Belleri v. United States*, 712 F.3d 543, 547 (11th Cir. 2013). Whether we may exercise supplemental jurisdiction over this appeal depends on whether the district court had diversity jurisdiction over the case at the time that it was filed. *See Grupo Dataflux v. Atlas Glob. Grp., LP*, 541 U.S. 567, 570–71 (2004). Although, nominally, the parties were completely diverse at the time of filing, the district court was obligated to realign AGLIC as St. Paul's co-plaintiff, since, from the outset, the interests of the excess insurers in this case were completely coextensive. And since AGLIC and AIG were both New York citizens at the time the lawsuit began, realignment would have destroyed diversity, stripping the district court of original jurisdiction and eviscerating the jurisdictional foundation for this appeal.

It is now fully accepted as a jurisdictional principle that, under the "realignment doctrine," "federal courts are required to realign the parties in an action to reflect their interests in the litigation. The parties themselves cannot confer diversity jurisdiction upon the federal courts by their own designation of plaintiffs and defendants." *City of Vestavia Hills v. Gen. Fid. Ins. Co.*, 676 F.3d 1310, 1313 (11th Cir. 2012). And it is the duty of the federal courts "to look beyond the pleadings, and arrange the parties according to their sides in the dispute." *City of Indianapolis*, 314 U.S. at 69 (quoting *City of Dawson*, 197 U.S. at 180). "Whether the necessary 'collision of interest' exists is [ ] not to be

7

determined by mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute." *Id*. (quotations and citations omitted).

In *City of Indianapolis v. Chase National Bank*, 314 U.S. 63 (1941), the Supreme Court explicated the realignment doctrine at some length. There, Chase National Bank served as trustee under a mortgage deed to secure bonds issued by Indianapolis Gas Co. *Id*. at 70. Following the issuance, Indianapolis Gas leased its gas plant property to Citizens Gas Co. in exchange for interest on its bond indebtedness and a six percent annual return on its common stock. *Id*. Citizens Gas then conveyed all of its property, including the leased premises, to the City of Indianapolis, but the City refused to be bound by the lease. *Id*. Chase, a New York corporation, sued Indiana corporations Indianapolis Gas and Citizens Gas as well as the City of Indianapolis in federal district court seeking a declaration that the lease was valid and binding on the defendants. *Id*. at 71. While Indianapolis Gas agreed that the lease bound the City, Citizens Gas and the City denied the lease's validity. *Id*.

When the case reached the Supreme Court, it framed the "primary and controlling matter in dispute" as being whether the lease initially conveyed by Indianapolis Gas to Citizens Gas was valid and binding on the City. *Id*. at 72. The Court noted that Chase and Indianapolis Gas had always agreed the lease bound

the City. *Id.* at 73. The Court reasoned that Chase and Indianapolis Gas were "partners in litigation," and, "if regard be had to the requirements of jurisdictional integrity, Indianapolis Gas and Chase are on the same side of the controversy not only for their own purposes but also for purposes of diversity jurisdiction. But such realignment places Indiana 'citizens' on both sides of the litigation and precludes assumption of jurisdiction based upon diversity of citizenship." *Id.* at 74. Thus, the Court concluded, "the District Court was without jurisdiction." *Id.* at 74–75; *see also id.* at 82–83 (citing *Helm v. Zarecor*, 222 U.S. 32 (1911)).

The former Fifth Circuit, in binding precedent, applied *City of Indianapolis*'s realignment doctrine in *Indemnity Insurance Co. of North America v. First National Bank at Winter Park*, 351 F.2d 519 (5th Cir. 1965).[1] There, a Pennsylvania corporation, Indemnity Insurance Co., brought a diversity action against Florida corporations First National Bank and Sanford Atlantic Bank. *Id.* at 521. Indemnity Insurance sought a declaration that it was not obliged to pay its insured First National under its forgery policy for losses First National incurred in honoring cashier's checks that had been fraudulently obtained from Sanford Atlantic. *Id.* at 521–22. Rather, Indemnity Insurance claimed, since Sanford Atlantic issued the checks, Sanford Atlantic was required to suffer the resulting

---

[1] In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the Court adopted as binding the precedent of the United States Court of Appeals for the Fifth Circuit, as it existed on September 30, 1981. *Id.* at 1209.

losses. *Id*. at 522. First National filed a cross-claim against Sanford Atlantic, likewise claiming that Sanford Atlantic bore responsibility for the forged checks. *Id*. at 522–23. Sanford Atlantic responded that First National should be realigned as Indemnity Insurance's co-plaintiff due to their parallel interests in the suit. *Id*. at 522. Moreover, Sanford Atlantic continued, if First National were realigned as a plaintiff, then the district court lacked diversity jurisdiction over the case, since First National and Sanford Atlantic were both Florida citizens. *Id*.

The former Fifth Circuit observed, "Since the question is one of jurisdiction it is our duty, as well as the duty of the district court, to notice the jurisdictional question and determine whether there is an actual, substantial controversy between citizens of different states, all of whom on one side are citizens of different states from all parties on the other side." *Id*. "Whether there is such a controversy is to be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute." *Id*. (citing *City of Indianapolis*, 314 U.S. 63). The principal purpose of the suit was to address whether the losses arising from the fraudulent checks fell on Sanford Atlantic or First National. *Id*. at 522. As for that dispute, the panel was "unable to find any substantial difference between the positions of [First National] and Indemnity." *Id*. Thus, it concluded, "We see no bona fide controversy between Indemnity and [First National]," since both Indemnity Insurance and First National sought a declaration that Sanford Atlantic bore

10

responsibility for the forged checks. *Id*. at 523. Consequently, the court realigned

First National as a party plaintiff, destroyed diversity, and dismissed the case for

want of jurisdiction. *Id*.

A panel of this Court revisited the realignment doctrine in *City of Vestavia*

*Hills v. General Fidelity Insurance Co.*, 676 F.3d 1310 (11th Cir. 2012). In that

case, judgment creditor Vestavia Hills, an Alabama citizen, sued judgment debtor

Cameron Development Corp., a fellow Alabama citizen, and its insurer General

Fidelity for payment on the judgment. *Id*. at 1312. General Fidelity removed the

case to the United States District Court for the Northern District of Alabama. *Id*. at

1312. Vestavia Hills moved to remand the cause to state court, arguing that, since

both the defendant Cameron Development and Vestavia Hills were Alabama

citizens, the district court lacked diversity jurisdiction. *Id*. The district court

realigned Cameron Development as Vestavia Hills's co-plaintiff and denied

Vestavia Hills's motion to remand, since both parties sought to compel General

Fidelity to cover Cameron Development's liability to Vestavia Hills. *Id*.

On appeal, we affirmed the district court's realignment, noting, "[I]t is clear

that Vestavia Hills did not seek any relief from Cameron [Development]," and that,

because "the only thing that Cameron [Development] could want out of this case is

for Vestavia Hills to win . . . the two parties' interests are identical or at least

materially so." *Id*. at 1314. As a result, the district court properly exercised

11

diversity jurisdiction over the case because the operation of the realignment doctrine rendered the parties completely diverse. *Id*. at 1314 ("Where the parties' interests are the same, we have held that those parties must be aligned together and have reversed a district court's failure to do so, even where the parties' interests were in opposition outside of the issues raised in the subject action."); *see also* Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3607 (3d ed.) ("The generally accepted test for the proper alignment of parties employed by the federal courts is whether the parties with the same ultimate interests in the outcome of the action are on the same side of the litigation.") (quotations omitted).

Application of the realignment doctrine deprives this Court and the district court as well of diversity jurisdiction over the case. It is indisputable that the primary and controlling matter at issue here was whether AIG unlawfully exposed Imperial to excess liability by prematurely depleting its primary and umbrella policies. Although St. Paul had named AGLIC as a party defendant in its original complaint, St. Paul and AGLIC had no "collision of interest" in this case. *See City of Indianapolis*, 314 U.S. at 69. As Imperial's excess insurers, both St. Paul and AGLIC sought a declaration that AIG had improperly exhausted Imperial's primary and umbrella policies. They asserted the same facts, pursued the same legal theories, sought the same relief, and, notably, they raised no claims against each other.

In its answer, AGLIC admitted virtually all of the allegations advanced by St. Paul. Moreover, throughout the proceedings, beginning with AGLIC's cross-claim, St. Paul and AGLIC asserted identical claims against AIG and requested the same relief. Indeed, St. Paul's complaint and AGLIC's cross-claim contained identical language as to the claims presented and the relief sought. Both parties contended that their excess policies "provide[ ] that [they do] not respond until proper exhaustion of the 'Immediate Underlying Insurance' and 'other insurance,' which includes, but is not necessarily limited to, the limits of the [AIG] Primary and Umbrella Policies." Likewise, both parties "respectfully request[ed] that [the district court] . . . issue a judgment which . . . declares whether the [AIG] Primary CGL and Umbrella Policies have been properly impaired and/or exhausted; . . . and, if not, directs [AIG] to pay [St. Paul and AGLIC] [ ] all amounts paid by [St. Paul and AGLIC] in settlements and defense costs in excess of [their] obligations under [their] Excess Polic[ies], with applicable interest." St. Paul and AGLIC thus employed identical language to press the same claims against AIG and seek the same relief.

Moreover, "it is clear [St. Paul] did not seek any relief from [AGLIC]," and "the only thing that [AGLIC] could [have] want[ed] out of this case [wa]s for [St. Paul] to win." *City of Vestavia Hills*, 676 F.3d at 1314.  By every true measure, St. Paul and AGLIC were "partners in litigation," and "if regard be had to the

13

requirements of jurisdictional integrity, [St. Paul] and [AGLIC] are on the same side of the controversy not only for their own purposes but also for purposes of diversity jurisdiction." *City of Indianapolis*, 314 U.S. at 74. Since St. Paul and AGLIC's interests in this litigation were entirely entwined, as we see it the district court was required to realign AGLIC as a plaintiff, resulting in the following accurate arrangement of the parties:

| Plaintiff | Defendant |
| --- | --- |
| St. Paul (MN, CT) | National Union (PA, NY) |
| AGLIC (NY, IL) | American Home (NY) |
|  | New Hampshire (PA, NY) |

Realignment of AGLIC as a party plaintiff would have destroyed diversity, since AGLIC, National Union, American Home, and New Hampshire were all New York citizens at the time of filing. Because the district court could not exercise diversity jurisdiction over St. Paul's complaint, it follows that it lacked supplemental jurisdiction over AGLIC's cross-claim. *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 554 (2005) ("In order for a federal court to invoke supplemental jurisdiction under [*United Mine Workers of Am. v.*] *Gibbs*[, 383 U.S. 715, 725 (1966)], it must first have original jurisdiction over at least one claim in the action. Incomplete diversity destroys original jurisdiction with respect to all claims, so there is nothing to which supplemental jurisdiction can adhere."). Thus, contrary to the parties' arguments, supplemental jurisdiction cannot provide the foundation for exercising jurisdiction over this appeal. Indeed, from the outset,

14

the district court lacked diversity jurisdiction over the case, and we cannot exercise supplemental jurisdiction over this appeal.

Accordingly, the judgment of the district court must be vacated, and the case remanded with instructions to dismiss for lack of subject matter jurisdiction.

**VACATED AND REMANDED WITH INSTRUCTIONS TO DISMISS**