HONORABLE STEVE C. JONES, UNITED STATES DISTRICT JUDGE
This matter is before the Court for consideration of the Motion to Dismiss Plaintiff's Complaint for Declaratory Judgment filed by individual Defendants Joi Partridge, Douglass Partridge, and Floyd Costner. Doc. No. [6].
I. BACKGROUND
This case arises out of a state tort action filed by individual Defendants Joi Partridge, Douglass Partridge, and Floyd Costner ("the Underlying Plaintiffs") against Defendant City of College Park ("the City" or "the Underlying Defendant").
*1290 [1] See Doc. No. [1-1]. In the state action, the Underlying Plaintiffs assert state-law claims against the City for wrongful death and negligent training and supervision. Id. at 29-34. These claims arise out of the deaths of three individuals after a high-speed police chase, in which the vehicle driven by the suspect collided with the vehicle of the deceased individuals. Doc. No. [1], p. 4.
The Underlying Plaintiffs filed suit in Fulton County State Court on August 4, 2016. See Complaint, Partridge, et al. v. City of College Park, No. 16EV003605 (Fulton Cty. State Ct. Aug. 4, 2016).[2] The Underlying Defendant filed its answer on September 1, 2016, in which it raised the affirmative defense of sovereign immunity. Doc. No. [6], p. 4 ("Defendant City of College Park is entitled to sovereign immunity and, therefore, is immune from suit and/or damages and/or damages are limited or capped to the extent allowed by law."). On November 15, 2017, after the case had proceeded for over a year, the Underlying Plaintiffs filed a motion for partial summary judgment on the issue of the City's sovereign immunity defense. See Doc. No. [7], p. 1.
In their motion, the Underlying Plaintiffs argue the City is potentially liable for up to $5 million, the coverage limit under its commercial liability insurance policy. See id. at 3-4; see also Doc. Nos. [1], pp. 7-8; [1-2], pp. 97-100, 111 (showing $1 million of primary coverage and $4 million of excess coverage for the business auto policy). They base their argument on O.C.G.A. § 36-92-2, which waives the sovereign immunity of a local government for claims arising out of the negligent use of a motor vehicle up to an aggregate amount of $700,000 per occurrence or up to the policy limits of any commercial liability insurance purchased by the governmental entity. See Doc. No. [7], p. 2; see also O.C.G.A. § 36-92-2(a)(3), (d)(3). The Underlying Plaintiffs attach the City's insurance policy to their motion and ask the state court to find that the policy's language does not take its coverage out of the purview of O.C.G.A. § 36-92-2(d)(3). See Exhibits B, D, E, F, and G to Motion, Partridge, et al. v. City of College Park, No. 16EV003605 (Fulton Cty. State Ct. Nov. 15, 2017)[3] ; see also Doc. No. [7]. Specifically, they seek "an order declaring as a matter of law that [the City] has waived its sovereign immunity protections and stands [sic] up to $5 million dollars in purchased commercial automobile insurance." Doc. No. [7], p. 11.
Two days after the Underlying Plaintiffs filed their motion for partial summary judgment, Plaintiff Atlantic Specialty Insurance Company ("Atlantic") filed this declaratory action in federal court. Doc. No. [1]. Atlantic sues its insured (the City) and the Underlying Plaintiffs, claiming that this Court can properly exercise diversity jurisdiction because Atlantic is a citizen of New York and Minnesota, while all Defendants are citizens of Georgia. Id. at 2-3. It seeks a declaration that, under O.C.G.A. § 36-92-2, the maximum amount the City can be found liable for is $700,000. Id. at 10. Atlantic asks the Court to declare "that the limits of the Policy for the claims against the City in the Underlying Lawsuit are $700,00.00." Id.
Atlantic's position relies on language in its policy, on the endorsement pages modifying both the Business Auto Coverage *1291 Form and the Excess Liability Coverage Form, that states:
We have no duty to pay "damages" on your behalf under this policy unless the defenses of sovereign and governmental immunity are inapplicable to you.... This policy and any coverages associated therewith does not constitute, nor reflect an intent by you, to waive or forego any defenses of sovereign and governmental immunity available to any Insured, whether based upon statute(s), common law or otherwise, including Georgia Code Section 36-33-1, or any amendments."
See Doc. No. [1-2], pp. 276, 300. Atlantic believes that this provision exempts the City's Business Auto Coverage from the provisions of O.C.G.A. § 36-92-2.
One month after Atlantic filed this case, the City filed its response to the Underlying Plaintiffs' motion for partial summary judgment in the state action. See Response, Partridge, et al. v. City of College Park, No. 16EV003605 (Fulton Cty. State Ct. Dec. 13, 2017).[4] The City argues that if "Plaintiffs could prove liability ... they could recover up to $700,000.00 and thereafter, the city would be immune as there has been no waiver of immunity above the statutory cap." Id. at 2. It does not argue that the issue of the amount of the waiver is not properly before the state court, but rather that a decision on the amount of waiver is "premature," noting that Georgia law requires the judge to reduce a jury award exceeding coverage to the applicable policy limits and urging the court to defer ruling on those limits until after trial. Id. at 3-5. The City also argues that its insurer (Atlantic) is an indispensable party to any determination of coverage. Id. at 6. Therefore, the City urges the state court to either wait for the ruling on coverage in this federal suit or entertain briefing from Atlantic on the issue of coverage. Id. at 7.
After filing its complaint, Atlantic promptly served the Underlying Plaintiffs, who filed the current motion to dismiss on November, 29, 2017. See Doc. Nos. [6]; [12]. Atlantic, however, did not serve the City until three months later on February 13, 2018. See Doc. No. [14]. In its answer, the City admits, or states it has insufficient information about, all of the allegations in Atlantic's complaint. See Doc. No. [15]. It asks the Court to "inquire into this declaratory judgment and issue a ruling setting forth the unequivocal amount of insurance coverage available and declaring that [the City's] maximum liability in the Underlying Lawsuit is the amount of insurance coverage provided by Atlantic as set forth in the insurance policy issued to the City." Doc. No. [15], p. 7. In the parties' Joint Preliminary Report and Discovery Plan, they describe the legal issue before the Court as "[w]hether the limits of Atlantic's policy for the claims in the Underlying Lawsuit are $700,000 or $5,000,000." Doc. No. [19], p. 4. On March 6, 2018, Atlantic informed the Court that the Fulton County State Court stayed the underlying state action until resolution of this suit. Id. at 3; see also Doc. No. [16-1].
II. LEGAL STANDARD
"[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Wilton v. Seven Falls Co., 515 U.S. 277, 282, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995). The district court "should ascertain whether the questions in controversy between the parties to the federal suit ... can better be settled in the *1292 proceeding pending in the state court." Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." Id.
The Eleventh Circuit set forth the following factors for district courts to evaluate when determining whether or not to proceed with a declaratory action:
(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
(2) whether the judgment in the federal declaratory action would settle the controversy;
(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"-that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case otherwise not removable;
(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
(6) whether there is an alternative remedy that is better or more effective;
(7) whether the underlying factual issues are important to an informed resolution of the case;
(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.
Ameritas Variable Life Ins. Co. v. Roach, 411 F.3d 1328, 1331 (11th Cir. 2005). No single factor is controlling, and the court may find other factors appropriate to consider. Id.
III. DISCUSSION
As a preliminary matter, the Court notes that both parties rely on documents outside the complaint. Each party submits court filings from the underlying state action in support of its arguments. See Doc. Nos. [6], pp. 26-44; [7]; [16-1]. Generally, introducing material outside of the pleadings converts a motion to dismiss into a motion for summary judgment. Fed. R. Civ. P. 12(d). However, where the pleadings are supplemented with documents that are central to the plaintiff's claim and their authenticity is not challenged, the court may consider the documents without converting the motion to one for summary judgment. Speaker v. U.S. Dep't of Health & Human Servs. Ctrs. for Disease Control & Prevention, 623 F.3d 1371, 1379 (11th Cir. 2010). Additionally, the Court may take judicial notice of publicly filed documents, such as documents filed in other cases. U.S. ex rel. Osheroff v. Humana Inc., 776 F.3d 805, 811 (11th Cir. 2015) ; see also Fed. R. Evid. 201(b). Therefore, the Court considers the court filings from the underlying state action in its resolution of the current motion.[5]
*1293 The Court also must address the jurisdictional grounds for this declaratory judgment. Kirkland v. Midland Mortg. Co., 243 F.3d 1277, 1279-80 (11th Cir. 2001) ("Federal courts are courts of limited jurisdiction and are required to inquire into their jurisdiction at the earliest possible point in the proceeding."). "In examining diversity jurisdiction, the district court is not bound by the formal alignment of the parties provided in the pleadings. Rather, the court must align the parties according to their true interests in the litigation." St. Paul Fire & Marine Ins. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 890 F.3d 1265, 1267 (11th Cir. 2018). The Supreme Court has noted:
To sustain diversity jurisdiction there must exist an actual, substantial controversy between citizens of different states, all of whom on one side of the controversy are citizens of different states from all parties on the other side. Diversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who defendants. It is our duty, as it is that of the lower federal courts, to look beyond the pleadings, and arrange the parties according to their sides in the dispute. Litigation is the pursuit of practical ends, not a game of chess. Whether the necessary collision of interest exists is therefore not to be determined by mechanical rules. It must be ascertained from the principal purpose of the suit and the primary and controlling matter in dispute.
City of Indianapolis v. Chase Nat'l Bank of City of N.Y., 314 U.S. 63, 69, 62 S.Ct. 15, 86 L.Ed. 47 (1941) (internal quotations and citations omitted).
Atlantic invokes jurisdiction because, as a citizen of New York and Minnesota, it is diverse from all of the Defendants, who are citizens of Georgia. However, it is not clear that the parties are properly aligned. The City argues in its state court filing that the most the Underlying Plaintiffs could recover is $700,000, and "thereafter, the city would be immune as there has been no waiver of immunity above the statutory cap." Response at 2, Partridge, et al. v. City of College Park, No. 16EV003605 (Fulton Cty. State Ct. Dec. 13, 2017).[6] Atlantic argues in its complaint that $700,000 "is the maximum amount for which the City can be liable under O.C.G.A. § 36-92-2." Doc. No. [1], p. 10. Thus, the insurer and insured are not arguing for different interpretations of the insurance contract. Rather, they are seeking the same interpretation: one that limits the City's liability to $700,000. The Court is not convinced that the "necessary collision of interest" exists in this declaratory action. Due to the alignment of Atlantic's and the City's interests at this juncture, the Court finds diversity jurisdiction lacking in this case.
Even if jurisdiction were proper, evaluation of the Ameritas factors would also lead to dismissal. The state court proceeding involves substantially the same parties (the City and the Underlying Plaintiffs) and substantially the same issue (the amount of waiver under O.C.G.A. § 36-92-2 ). Although Atlantic is not a party in the state action, and the state action involves more issues than just the amount of waiver, the substantial interrelatedness of the parties and issues qualify these cases as parallel actions. Even in the absence *1294 of a parallel action, application of the Ameritas factors is appropriate. First Mercury Ins. Co. v. Excellent Computing Distribs., Inc., 648 F. App'x 861, 866 (11th Cir. 2016) ("[W]e have never held that the Ameritas factors apply only when reviewing parallel actions. Indeed, nothing in the Declaratory Judgment Act suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues."). Therefore, the Court analyzes the Ameritas factors.
First, the current declaratory action would require the Court to determine whether the language of Atlantic's contract with the City overrides the provisions of O.C.G.A. § 36-92-2, in which the Georgia legislature explicitly and purposefully waived the sovereign immunity of local governments with respect to claims for negligent use of a motor vehicle. Both the contractual and statutory prongs of such an analysis turn on state law, not federal law. Finding that a local government and its insurer can contract around the legislative waiver in O.C.G.A. § 36-92-2 would have far-reaching implications for all future insurance contracts between local government entities and insurers in Georgia. As Georgia has a strong interest in deciding the legislature's intent in enacting O.C.G.A. § 36-92-2, the Court finds the first factor weighs in favor of abstention.
Second, this Court's ruling will not resolve all of the claims in the underlying state action. Interpretation of the contract between Atlantic and the City may resolve the motion for partial summary judgment in the state action, but the state action will continue, as the City's liability has not yet been determined. "[A]llowing multiple proceedings where a state court is capable of resolving all the issues would not further judicial efficiency." Geico Gen. Ins. Co. v. Kastenolz, 649 F. App'x 647, 650-51 (11th Cir. 2016). Accordingly, the second factor weighs in favor of abstention.
Third, although determining the legal rights in question would be useful in the sense that it addresses a pertinent issue in the state court proceeding, that does not mean that having this Court make the determination is more useful than have the state court make the determination. The state court is equally as capable, if not more so, of interpreting Georgia insurance contracts and their intersection with a Georgia statute waiving sovereign immunity. As this Court's decision would only impact Georgia contracts and Georgia law, there is not much useful purpose in having a federal court decide this issue rather than a state court. The third factor weighs in favor of abstention.
Fourth, strong evidence exists that the purpose of filing this federal action was an attempt to shop for a more favorable forum. Had Atlantic filed this declaratory action seeking a determination of the amount of its coverage obligation to the City at the outset of the underlying suit, this Court would be less skeptical about its motivations. But, Atlantic waited until the underlying suit proceeded for over fifteen months before filing a federal declaratory action. Moreover, this suit was filed just two days after the Underlying Plaintiffs sought summary judgment on the exact issue Atlantic wants this Court to decide. Although Atlantic asserts that it had to file this action because it is not a party to the state action (and, therefore, cannot represent its own interests), the Court is not swayed by this argument. The City can adequately represent Atlantic's interests at this stage, especially since both parties are making the same argument. Additionally, the City asked the state court to hear from Atlantic on the issue of coverage. Finally, Georgia courts are frequently *1295 called upon, in the event that a jury awards more than $700,000, to determine if the governmental entity is insured, and if so, what the amount of coverage is. Atlantic's preference that a federal court, rather than a state court, decide this issue seems merely an attempt to avoid the state's jurisdiction. The fourth factor weighs in favor of abstention.
Fifth, this Court proceeding to wrest this issue out of the hands of the state court would most certainly engender friction between the state and federal courts. As previously noted, this is a state law issue that is properly raised before a state court in a proceeding that has been underway for almost two years. The fact that the state court temporarily stayed its proceedings waiting for the resolution of this matter is of no import. There is no need for this Court to insert itself into the resolution of this issue and encroach on the state court's jurisdiction. This factor weighs in favor of abstention.
Sixth, the Court finds that an alternative remedy to this declaratory action exists. Not only is the state court able to resolve this issue, but such a course would be more efficient than having two simultaneous suits. The sixth factor weighs in favor of abstention.
The seventh and eight factors weigh slightly in favor of retaining jurisdiction over this declaratory action. Because the resolution of this federal suit turns on contractual and statutory analysis, the underlying factual issues to be determined at the state level regarding liability do not play a large role. Therefore, these factors do not tip the scales toward abstention.
Finally, and perhaps most importantly, the Court finds that the legal issue of whether or not local governments and their insurers can contract around Georgia's statutory waiver provisions and exempt themselves from the provision waiving liability up to the limit of an applicable insurance policy, is central to Georgia's public policy behind enacting O.C.G.A. § 36-92-2. As federal law plays no role in resolving this legal issue, this Court finds it inappropriate to interfere in the determination of this issue.
IV. CONCLUSION
For the foregoing reasons, the Court declines to exercise jurisdiction in this case. Accordingly, the individual Defendants' motion to dismiss is GRANTED . Doc. No. [6]. This case is DISMISSED WITHOUT PREJUDICE . As an ancillary matter, Plaintiff's motion to supplement its response to the motion to dismiss is GRANTED . Doc. No. [16]. The Clerk is DIRECTED to close this case.
IT IS SO ORDERED this 29th day of June, 2018.

The Underlying Plaintiffs named additional defendants in the state action, however, those parties are not relevant to the resolution of the current issues. See Doc. No. [1-1].

See infra note 5.

See infra note 5.

See infra note 5.

Determining if the district court should abstain from hearing a declaratory action "may entail inquiry into the scope of the pending state court proceeding and the nature of the defenses open there." Brillhart, 316 U.S. at 495, 62 S.Ct. 1173. The Rules of Evidence allow the Court to take judicial notice of documents either at the request of a party or on its own initiative. Fed. R. Evid. 201(c). Therefore, in addition to the documents supplied by the parties, the Court also considered filings pulled directly from the Fulton County State Court docket. See Fulton State & Magistrate Court Smart Search, https://publicrecordsaccess.fultoncountyga.gov/Portal/Home/Dashboard/29 (search "16EV003605").

See infra note 5.